359 So.2d 1371 (1978)
Travis JOHNSON
v.
STATE of Mississippi.
No. 50474.
Supreme Court of Mississippi.
May 31, 1978.
Rehearing Denied July 12, 1978.
Cumbest & Cumbest, Fielding L. Wright, Jr., James H. Heidelberg, Pascagoula, for appellant.
A.F. Summer, Atty. Gen. by Carolyn B. Mills, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROBERTSON, LEE and BOWLING, JJ.
*1372 LEE, Justice, for the Court:
Travis Johnson was convicted of armed robbery in the Circuit Court of Jackson County and was sentenced to fifteen (15) years in custody of the Mississippi State Department of Corrections. He appeals and assigns the following errors in the trial below:
(1) The verdict of the jury was against the overwhelming weight of the evidence.
(2) The trial court erred in overruling a motion for new trial.
(3) The court erred in allowing the incourtroom identification of the defendant by the prosecuting witness over objection.
(4) Appellant's Fifth, Sixth and Fourteenth Amendment rights were violated by *1373 the prosecution's post-indictment photographic lineup.
(5) The trial court erred in denying the writ of error coram nobis.
On January 3, 1974, Faye's Grocery in Moss Point, Mississippi was robbed of approximately five hundred dollars ($500.00). Mrs. Kim Stone, the clerk on duty, testified that, at approximately 6:45 a.m., appellant came into the store and ordered soap powder, bleach and beer. After she rang up the bill for the items, appellant pointed a gun at her and said, "Give me all your money." She then complied with his order to follow him out of the store and "round back," but, at the first opportunity, she ran to a nearby trailer.
Detective Barry Jones investigated the robbery and developed a suspect. On January 9, six days after the robbery, he showed Mrs. Stone a series of photographs. She identified one photograph as appellant. Mrs. Stone was shown other photographs on January 25, 1977, approximately two weeks before the trial, and she again picked out a photograph of appellant. During the trial of the case, she made an in-court identification of the appellant as the person who committed the robbery.
Appellant's defense was an alibi. He testified that during Christmas, 1973, he lived in Nashville, Tennessee, and he went to Jackson County for a visit during the Christmas holidays. He arrived in Jackson County Saturday, December 29, where he stayed with his mother. He further testified that on January 2, 1974, he went to Columbus, Georgia with his cousin, Willie James Riley, accompanied by Angela Johnson, Raymond Simmons, and Lonnie Johnson, that he decided to go back to Nashville, Tennessee, and he left Columbus by bus en route to Nashville in the early morning hours of January 3, 1974. Angela Johnson, her mother, Mrs. Barbara Johnson, and father, Willie James Johnson (whose home they visited in Columbus) corroborated appellant's alibi in part. However, they were unable to testify that appellant boarded the bus and went to Nashville. Raymond Simmons and Willie James Riley were not called as witnesses, although they lived in Moss Point, Mississippi, and their addresses were known to appellant.

I.

Was the verdict of the jury against the overwhelming weight of the evidence?

II.

Did the court err in overruling a motion for new trial?
Lonnie Johnson was called to the stand as a rebuttal witness for the State. No objection was made to any of his testimony. He was asked three different times who returned with him from Columbus, Georgia to Moss Point and his response to each question was that he did not remember. He was excused and Detective Barry Jones was called as a rebuttal witness. No objection was made to the testimony offered by him. He testified that he took a written statement from Lonnie Johnson [See Appendix] and, among other things, Lonnie Johnson told him that appellant returned with him to Moss Point, that they got back to Moss Point about 6:00 a.m., Thursday, January 3, 1974, and that Travis Johnson got out of the automobile near Bill Johnson's grocery on Frederick Street.
Mrs. Stone positively identified appellant as the person who committed the robbery. It is well settled that such testimony, when unimpeached, is sufficient to sustain a verdict of guilty. Contrary to Mrs. Stone's positive identification, appellant testified that he was in Nashville, Tennessee when the crime was committed. The fact that he actually caught a bus to Nashville and was in Nashville is not corroborated. The jury was not under a duty to accept the alibi of appellant [Spikes v. State, 302 So.2d 250 (Miss. 1974)] and, viewing the evidence as a whole, we are of the opinion that the verdict of the jury was not *1374 against the overwhelming weight of the evidence, and that the motion for new trial was correctly overruled by the court. Murphree v. State, 228 So.2d 599 (Miss. 1969); Ivey v. State, 206 Miss. 734, 40 So.2d 609 (1949).

III.

Did the court err in allowing the in-court identification of appellant by the prosecuting witness over objection of counsel?
Improper use of photographs by police officers may cause witnesses to be mistaken in identifying criminals. The danger increases, if a witness is shown pictures of several persons and among them is a photograph of a single individual which is emphasized or is shown in some particular manner. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Appellant contends that Mrs. Stone could not identify him at trial as the person who robbed her three years earlier and that her memory was refreshed by viewing the photographs two weeks before trial. However, Mrs. Stone testified that she could identify appellant without having seen the pictures and there was no doubt in her mind that appellant was the robber. She went through the photographs at the police station and chose appellant's picture; no suggestion was made as to who the suspect was at the time the photographs were seen by her. Mrs. Stone testified she was only two feet away from appellant when the robbery occurred, and she could not forget him. There is ample evidence that Mrs. Stone's in-court identification was based upon independent facts and, under the totality of circumstances surrounding the confrontation, there was no error in permitting the in-court identification. Clubb v. State, 350 So.2d 693 (Miss. 1977); Stevenson v. State, 244 So.2d 30 (Miss. 1971).

IV.

Were appellant's Fifth, Sixth and Fourteenth Amendment rights violated by the prosecution's post-indictment photographic lineup?
Appellant contends that the photographic lineup was not permissible because counsel was not present at the time Mrs. Stone viewed the photographs. In United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), it was held that a post-indictment lineup reaches the critical stage of the prosecution which requires presence of counsel. Appellant argues that this rule should apply where a witness views a photographic lineup.
The United States Supreme Court has held that the Sixth Amendment does not grant the right to counsel at photographic displays conducted by the government for the purpose of allowing a witness to make identification [United States v. Ash, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973)], and this Court followed that principle in Clubb v. State, supra.
There was no violation of due process for Mrs. Stone to view the photographs presented to her in the absence of counsel for appellant, and this assignment is without merit.

V.

Did the trial court err in denying the writ of error coram nobis?
After the guilty verdict was returned, appellant filed a petition for writ of error coram nobis setting out that Willie James Riley and Raymond Simmons would testify that appellant left them at the bus station in Columbus, Georgia and did not return with them in the automobile from Columbus to Jackson County. Testimony was taken on the application and Willie James Riley was unable to testify on account of a mental condition. However, Raymond Simmons testified that appellant did not go back with them to Jackson County.
Appellant contends that the writ should have been granted by the trial court because the testimony of Raymond Simmons *1375 established that appellant was left at the bus station in Columbus, Georgia and that said testimony would cause a different result, since he was the only witness who could testify that appellant actually took the bus. In Lang v. State, 230 Miss. 147, 87 So.2d 265 (1956), in discussing petitions for writ of error coram nobis, this Court said:
"We recognize that there must be an end to litigation, and a judgment once solemnly entered must not be lightly opened or vacated, and never except for cogent reasons. Such a petition should be confined to the narrowest limits compatible with justice; it will be sustained only if the newly discovered evidence is of such nature that it would be practically conclusive that it would cause a different result; it will not be sustained if the petitioner or his attorney knew of the existence of such evidence at the time of the trial, or could have discovered it by the exercise of due diligence; it will not be sustained if the newly discovered evidence is merely cumulative, or additional to that adduced at the trial; it will not be sustained if the newly discovered evidence merely tends to impeach other testimony offered at the trial; and it must be filed as soon as reasonably practical after the discovery of the new evidence." 230 Miss. 147 at 172, 92 So.2d 670 at 675-676 (1957).
Although appellant argues that the testimony of Simmons was newly-discovered evidence which was unknown to him at the time of trial, and could not have been discovered with due diligence, and that a different result would have been brought about by such testimony, the conditions of Lang were not met. Appellant knew that Raymond Simmons and Willie Riley went with him to Columbus, Georgia, and knew that they were living in Moss Point and were available at the time of the trial. He testified at trial that Lonnie Johnson left him at the bus station and the testimony of Simmons may be said to be cumulative.
Under the facts of this case and following the principle stated in Lang v. State, supra, the trial court correctly denied the petition for writ of error coram nobis.
For the reasons stated, the judgment of the trial court is affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.

Appendix
"On Wednesday, January 2nd, 1974, Travis Johnson, Riley, Nathan Simmons, and myself, Lonnie Johnson, went to Columbus, Georgia, to take my sister, Angela Johnson, home. Travis Johnson was going to catch a bus to Nashville, Tennessee, from Georgia. I, Lonnie Johnson, thought he had enough money but he, Travis Johnson, didn't so we came back to Moss Point. We  Travis Johnson, Riley, Nathan Simmons, and Lonnie Johnson  got back to Moss Point about six o'clock a.m. on Thursday, January 3rd, 1974. We dropped Riley off at his house first. Then we, Nathan Simmons, Travis Johnson, and Lonnie Johnson, were headed towards my  Lonnie Johnson's  girlfriend's house when Travis Johnson asked me, Lonnie Johnson, to let him out just west of Bill Johnson's Grocery on Frederick Street after you pass the railroad tracks. He, Travis Johnson, got out there and me  Lonnie Johnson  and Nathan Simmons went to my girlfriend's house at 1717 Brewer Street."