460 So.2d 792 (1984)
In re Alvin HILL.
No. 53795.
Supreme Court of Mississippi.
November 14, 1984.
*794 Percy S. Stanfield, Jr., Stanfield, Carmody, Coxwell & Creel, Jackson, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
EN BANC.
DAN M. LEE, Justice, for the Court:

ON MOTION FOR LEAVE TO FILE PETITION FOR WRIT OF ERROR CORAM NOBIS
Alvin Hill was convicted of capital murder in the Circuit Court of DeSoto County and on November 21, 1980 he was sentenced to death. This Court affirmed Hill's conviction and sentence in Hill v. State, 432 So.2d 427 (Miss. 1983). We denied Hill's petition for rehearing on May 25, 1983 and his petition for certiorari to the United States Supreme Court was denied *795 on November 7, 1983. On February 10, 1984, Hill filed this motion for leave to file petition for writ of error coram nobis. For the reasons stated below, we deny that motion.
For purposes of orderly discussion, we have divided Hill's arguments into three parts: (1) newly discovered evidence; (2) constitutional issues; and (3) ineffective assistance of counsel.

I.

A.
Hill's first claim is that "Newly discovered evidence reveals that the alleged murder weapon, which was placed in evidence and exhibited to the jury was unquestionably obtained as a result of petitioner's suppressed confession." Hill claims that there was no independent source for the discovery of the revolver and that the admission of that weapon under such circumstances was a violation of his Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights.
Hill states that he admitted during intensive interrogation that he committed the robbery and murder in DeSoto County. He claims that he further admitted only to Rick Ward, a DeSoto County investigator, and Bobby Gene Biffle, a DeSoto County Constable, that he returned the murder weapon to Robert Carter, a resident of Memphis, from whom he had borrowed it. That confession was suppressed at trial; however, the gun, which according to a ballistics examination and pathology test was the one used in the shooting of the victim, was admitted as evidence.
Hill claims that the only source of evidence disclosing the whereabouts of the murder weapon aside from that obtained as a result of the confession, was "Sheriff Monteith's bald assertion that, as a result of interviewing Sammie Hampton, he informed the Memphis Police that the weapon was possessed by Robert Carter." On affirmance of Hill's conviction, this Court noted Monteith's actual testimony as follows:
When Sheriff Monteith was called as a witness by the state, the record reveals the following testimony relative to the source of his information about the murder weapon:
QUESTION: Sheriff Monteith, in the course of your investigation, did you have occasion to interview Sammy Hampton?
ANSWER: I did.
QUESTION: As a result of those interviews, did you at any time inform officers of the Memphis Police Department where a possible gun could be found?
ANSWER: I did.
Hill v. State, 432 So.2d at 431, 432.
Hill asserts, contra to the trial judge's decision on the issue, that this was not enough to establish an independent source of evidence for admission of the gun. In further addressing this issue on direct appeal, this Court stated:
On the testimony which was before the circuit judge and the record as made, no one could ever know which of these two hypotheses is correct. Argument from now on till doom's day could never give the answer; from this record we are damned to an eternal suspense.
Under these circumstances we are not about to fault a beleagured trial judge, nor can we say he abused his discretion in finding that the information about the gun came from an independent source. On the record before him at trial, and in the motion for a new trial, he had a right to believe the testimony of the officers, and we find no reversible error on this record in his having done so.
432 So.2d at 437.
Hill now comes before this Court claiming that newly discovered evidence based on statements by Monteith and Hampton ends the "eternal suspense" and "conclusively establishes that the firearm was obtained as a direct result of petitioner's suppressed confession." Exhibit I provided by Hill is Hampton's affidavit which states that Hampton never told Monteith the firearm used in the murder of Robert Lee *796 Watkins could be found in possession of Robert Carter or be found by contacting Carter, that he had no knowledge at that time of the weapon's whereabouts, that he was never personally acquainted with Robert Carter, and that he never suggested to Monteith that he speak to Carter in regard to the murder. Secondly, Hill asserts in paragraph 33 of his petition that "Sheriff Monteith is now willing to testify that he had little or no involvement in the investigation of the DeSoto County hi-jacking because the investigation into the Tunica County hi-jacking was his sole responsibility, he has no recollection of how the murder weapon was found, and in fact, he does not recall whether it was recovered at all." There is no attached affidavit supporting Hill's assertion.
The crucial question here is whether what Hill claims is newly discovered evidence actually falls into that category. Guidelines that have been followed by this Court in granting a new trial on newly discovered evidence were set forth in Lang v. State, 230 Miss. 147, 92 So.2d 670 (1957).
We entertain and sustain the petition under Chapter 250, Laws of 1952, as being a petition for leave to file in a trial court a motion to vacate the judgment and for a new trial on the ground of newly-discovered evidence, and such leave is hereby granted. We recognize that there must be an end to litigation, and a judgment once solemnly entered must not be lightly opened or vacated, and never except for cogent reasons. Such a petition should be confined to the narrowest limits compatible with justice; it will be sustained only if newly-discovered evidence is of such nature that would be practically conclusive that it would cause a different result; it will not be sustained if the petitioner or his attorney knew of the existence of such evidence at the time of the trial, or could have discovered it by the exercise of due diligence; it will not be sustained if the newly-discovered evidence is merely cumulative, or additional to that adduced at trial; it will not be sustained if newly-discovered evidence merely tends to impeach other testimony offered at the trial; and it must be filed as soon as reasonably practical after the discovery of the new evidence.
230 Miss. at 171, 172, 92 So.2d at 675, 676.
In Entrekin v. State, 242 Miss. 262, 134 So.2d 926 (1961), an application for leave to present to the trial court a motion for a new trial on the ground of newly-discovered evidence was denied. Affidavits from three people were attached to the application asserting facts involving the conviction. This Court stated that with the "exercise of any diligence whatever" the asserted facts would have previously been disclosed. 242 Miss. at 266, 134 So.2d at 927.
In Johnson v. State, 359 So.2d 1371 (Miss. 1978), this Court affirmed the lower court's denial of a writ of error nobis citing Lang. The applicant wished to establish that Willie James Riley and Raymond Simmons left him at a bus station in Georgia and that he did not return with them to Jackson County, Mississippi. The Court stated the following:
Although appellant argues that testimony of Simmons was newly-discovered evidence which was unknown to him at the time of trial, and could not have been discovered with diligence, and that a different result could have been brought about by such testimony, the conditions of Lang were not met. Appellant knew that Raymond Simmons and Willie Riley went with him to Columbus, GA, knew that they were living in Moss Point and were available at the time of trial. He testified at trial that Lonnie Johnson left him at the bus station and the testimony of Simmons may be said to be cumulative."
359 So.2d at 1375.
On the basis of the above authorities, we hold that the appellant's allegations do not represent new evidence that could not have been discovered in the exercise of due diligence at or before the time of trial. Therefore, we find no merit to Hill's first argument.

*797 B.
Hill's next argument is that "newly discovered evidence reveals that the failure of petitioner's trial counsel to raise an objection to the concededly improper questioning of the co-defendant was definitely not a matter of trial strategy." The questioning Hill refers to is reported in the decision on direct appeal as follows:
The state called the co-defendant Gregory Tucker as a witness. During questioning of Tucker, the record reveals the following:
Q. What have you been convicted of?
A. Assault and larceny of a person in Tennessee, and manslaughter down here.
Q. Manslaughter down here in connection with what?
A. With this case here.
As petitioner points out, this Court held on direct appeal that the manner in which his co-defendant was questioned constituted error, but reversal was not warranted because Hill's attorneys did not raise an objection.
As to the state's questioning of Tucker about his conviction of manslaughter, this constituted error. See Buckley v. State, 223 So.2d 524 (Miss. 1969). The error was not as egregious as it would have been had Tucker been a witness for the defense, and the state had brought it out on cross-examination. See Warren v. State, 407 So.2d 100 (Miss. 1981); and Henderson v. State, 403 So.2d 139 (Miss. 1981). The state's questioning of Tucker, a state witness, about his conviction of manslaughter was not altogether a one way street benefiting the state. This information enabled the jury to see that a radically different treatment had been extended by the state to Tucker than that proposed for Hill.
The defense sought mileage out of this concession in cross-examination.
In view of the fact that no objection was made, that Tucker was cross-examined about his plea and conviction, and the defense at least three times in closing argument compared the treatment and punishment of Tucker as opposed to that being sought for Hill. (R. 1075-1076), defense counsel's complaint at this stage appears directed towards a trial strategy in which they were participants. What this amounts to is a trial strategy counsel aided and abetted, and now seek to criticize.
Moreover, counsel did not even see fit to assign this error in their motion for a new trial. If defense counsel did consider that their client was done an injustice in this respect, we cannot understand their failure to mention it in their motion for a new trial.
432 So.2d at 439.
Hill argues there is new evidence to establish that the failure of his trial counsel to object was a result of their ignorance of the law and not trial strategy. As defined by Lang, supra, newly discovered evidence is that which could not have been discovered by the exercise of due diligence either before or at the time of trial. Certainly, trial counsel's ignorance of the applicable law does not fit into this definition and could in no way be construed as newly discovered evidence. Therefore, Hill's second argument is without merit.

C.
Hill's next argument is very similar to the one immediately preceding. Here he argues that newly discovered evidence reveals that this Court's conclusion that his counsel did not consider the prosecutor's final argument to be prejudicial is factually incorrect. In using the same argument he takes the stance that his trial counsel's failure to object to the prosecutor's closing argument was wholly inadvertent and was the product of both a misunderstanding between counsel and ignorance of constitutional and criminal law. As we have held that the reasons for a mistake by counsel do not constitute newly discovered evidence, this argument is without merit.

II.

D.
A warrantless search of Hill's pickup truck which revealed a U-Haul rental *798 contract dated July 11, 1979, and bearing Hill's name and the license plate of the rented truck was apparently conducted before Hill confessed to the robbery and murder. At trial there was no request for suppression of the U-Haul contract and the claim was not brought on direct appeal. The failure to raise this claim at trial or on direct appeal procedurally bars it. Pruett v. Thigpen, 444 So.2d 819 (Miss. 1984); King v. Thigpen, 441 So.2d 1365 (Miss. 1983); Evans v. State, 441 So.2d 520 (Miss. 1983); Smith v. State, 434 So.2d 212 (Miss. 1983); Edwards v. Thigpen, 433 So.2d 906 (Miss. 1983); Wheat v. Thigpen, 431 So.2d 486 (Miss. 1983).

E.
Hill next asserts that the prosecuting attorney used his peremptory challenges to exclude all blacks from the jury in Hill's trial. He specifically points out that at least four of the twelve challenges were exercised against blacks and that the jury was all white.
This Court has held on numerous occasions that exercising peremptory challenges to exclude blacks from jury panel is not error. Hughes v. State, 420 So.2d 1060 (Miss. 1982); Gaines v. State, 404 So.2d 557 (Miss. 1981); Coleman v. State, 378 So.2d 640 (Miss. 1979). In Gaines this Court cited to a decision of the United States Supreme Court which supported its conclusion:
We cannot hold that the striking of Negroes in a particular case is a denial of equal protection of the laws. In the quest for an impartial and qualified jury, Negro and white, Protestant and Catholic, are alike subject to being challenged without cause. To subject the prosecutor's challenge in any particular case to the demands and traditional standards of the Equal Protection Clause would entail a radical change in the nature and operation of the challenge. The challenge, pro tante, would no longer be peremptory, each and every challenge being open to examination, either at the time of the challenge or at a hearing afterwards. The prosecutor's judgment underlying each challenge would be subject to scrutiny for reasonableness and sincerity. And a great many uses of the challenge would be banned.
In light of the purpose of the peremptory system and the function it serves in a pluralistic society in connection with the institution of jury trial, we cannot hold that the Constitution requires an examination of the prosecutor's reasons for the exercise of his challenges in any given case. The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes. Any other result, we think, would establish a rule wholly at odds with the peremptory challenge system as we know it. Hence the motion to strike the trial jury was properly denied in this case.
([Swain v. State of Alabama], 380 U.S. [202] at 221-222, 85 S.Ct. [824], at 837 13 L.Ed.2d [759] at 773 [1964])
Based on these authorities there is no merit to this argument. Furthermore, the issue was not raised on direct appeal and is thereby subject to a procedural bar. See Pruett, supra; King, supra; Evans, supra; Smith, supra; Edwards, supra; and Wheat, supra.

F.
Hill next argues that the state's failure to produce a penholder pursuant to his request for discovery under Rule 4.06 of the Mississippi Uniform Criminal Rules of Circuit Court Practice rendered that penholder inadmissible. The failure to raise this issue on direct appeal renders it procedurally barred. See Pruett, supra; King, supra; Evans, supra; Smith, supra; Edwards, supra; and Wheat, supra.

G.
Hill next argues that the prosecuting attorney engaged in acts of misconduct *799 and a pattern of misbehavior during the guilt and sentencing phases of the trial. First, he complains that the prosecutor asked questions of the victim's wife that were highly prejudicial and made for the purpose of eliciting sympathy for the victim's family. The questions pertained to children of the victim and his wife and their ages, whether he had been a good provider and how close the children were to their father. Petitioner concedes that no objection was made at the time of trial. Therefore, this argument is barred and may not be raised for the first time on appeal. Pruett, supra; King, supra; Evans, supra; Smith, supra; Edwards, supra; Wheat, supra.
Hill also asserts that the prosecutor was guilty of misconduct by bringing out a statement made by Hill while in jail. While Hill was being questioned by an FBI agent when he was in the county jail, he was led to believe that his co-defendant, Hampton, inculpated him in the DeSoto County crime. He responded to the FBI agent "Sammy will get his." Hill argues that this statement constituted prejudicial hearsay and misconduct on the part of the prosecutor. Although there was an objection at trial, that objection was on the grounds that the corpus delicti had not yet been established. No other objection to the admissibility of this statement was made either at trial or raised on direct appeal. Therefore, the point is now procedurally barred. Pruett, supra; King, supra; Evans, supra; Smith, supra; Edwards, supra; Wheat, supra. Hill's other arguments regarding prosecutorial misconduct are likewise barred.

H.
Hill next argues that he should have been granted a jury instruction which charged that diminished mental capacity was a mitigating circumstance. It is claimed that Hill's IQ of 70 and a head injury sustained prior to the commission of the crime warranted that the jury be instructed to consider his mental capacity as a mitigating circumstance. Hill claims that his trial attorneys will testify that their failure to request this instruction was inadvertent; however, affidavits supplied by the attorneys do not include such a statement.
Miss. Code Ann. § 99-19-101(6)(f) defines the mitigating circumstance concerning mental capacity in capital cases as when "the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired." At trial a guidance counsellor from Hill's high school testified that his IQ was about 70, that he was a slow learner, and scored low on achievement tests. She also stated that he had had a car accident in which a friend was killed in 1972. In that car accident Hill sustained a head injury. Thereafter he returned to school and excelled in carpentry work. He went on to graduate and got a college football scholarship. Hill's high school coach testified that after the accident Hill seemed withdrawn. On the basis of this evidence, we find that there was nothing presented which would have warranted an instruction on Hill's capacity to "appreciate the criminality of his conduct" as required by the statute at the time the murder took place. There is no merit to this assignment of error.

I.
The jury was instructed at the sentence phase that it should consider as an aggravating circumstance that the capital offense was committed for pecuniary gain under Miss. Code Ann. § 99-19-101(5)(f) where the capital offense was committed while the defendant was engaged in the commission of robbery as delineated in § 99-19-101(5)(d). Hill claims this violated his Eighth and Fourteenth Amendment rights by giving one aggravating circumstance double weight. This same argument was addressed in Tokman v. State, 435 So.2d 664 (Miss. 1983), wherein we held:
It is additionally urged that instruction S-4 was improper because it permitted the jury to consider as aggravating circumstance that the capital murder was *800 committed for pecuniary gain. The thrust of this argument is the instruction permits the doubling of aggravating circumstances (saying the same thing twice) when the evidence would permit only one aggravating circumstance. Section 99-19-101(5)(d) lists robbery as an aggravating circumstance which in conjunction with a homicide will elevate it to capital murder. Sub-section (f) gives the aggravating circumstance, "The capital offense was committed for pecuniary gain," the same potential of elevating a homicide to capital murder. But we think an indictment, as here, charging capital murder in the course of a robbery permits instructions on both "robbery" and "pecuniary gain" as aggravating circumstances because the evidence supports both as it reveals the robbery was committed for pecuniary gain during the course of which the homicide occurred. They are inextricably intertwined in this case in our opinion. We gather from the argument there is a belief in some segments of the bar that the death sentence is imposed or is not imposed numerically.[1] However, this belief is contrary to § 99-19-101(2)(b) which provides for a "weighing" by the jury of the aggravating and mitigating circumstances in the sentencing phase and our decisions accord with this directive.
[1] I.e., two aggravating circumstances and one mitigating circumstance require the imposition of the death sentence or conversely one aggravating circumstance and two mitigating circumstances require a life sentence.
435 So.2d at 669.
Based on our holding in Tokman, there is no merit to this argument.

J.
Hill next claims that the trial court violated his rights under the Eighth and Fourteenth Amendments in allowing to be submitted to the jury as an aggravating circumstance Miss. Code Ann. § 99-19-101(5)(h) which provides as an aggravating circumstance that the offense was especially heinous, atrocious or cruel. No objection to this instruction appears in the trial record and the matter may not be raised for the first time here. Pruett, supra; King, supra; Evans, supra; Smith, supra; Edwards, supra; Wheat, supra.

K.
Hill next complains that he was provided no notice of "what aggravating circumstances applied or should be considered either prior to trial or prior to the sentencing proceeding." Because Hill failed to raise this issue on direct appeal, the matter is procedurally barred. Pruett, supra; King, supra; Evans, supra; Smith, supra; Edwards, supra; Wheat, supra.

M.
Hill next argues that extensive publicity prior to and during the trial denied him a fair trial in violation of the Sixth and Fourteenth Amendments. At no point prior to trial did Hill's attorneys request a change of venue. Having failed to give the trial judge the opportunity to exercise his discretion in granting a change of venue or to raise this issue on direct appeal, this argument is now barred. Pruett, supra; King, supra; Evans, supra; Smith, supra; Edwards, supra; Wheat, supra.

N.
Hill next asserts that the capital murder statute, Miss. Code Ann. § 97-3-21 (Supp. 1983) is unconstitutional in that it does not allow a jury to sentence a defendant to life imprisonment without parole as an alternative to death. In Smith v. State, 419 So.2d 563, 564 (Miss. 1982) we addressed this same argument and found it without merit. We are not persuaded here that our holding in Smith should be altered. Therefore, there is no merit to this argument.

O.
Hill next contends that the death penalty is administered and applied arbitrarily, capriciously, and whimsically in the State of Mississippi. On direct appeal this Court proportionately reviewed the infliction *801 of the death penalty on Alvin Hill to cases involving similar crimes, facts and defendants. We concluded that "the infliction of the death penalty on Alvin Hill is not disproportionate, wanton or freakish." Hill v. State, 432 So.2d at 443. Therefore, this question has already been decided and may not now be relitigated.

P.
Hill next argues that his death is being exacted pursuant to a pattern and practice of Mississippi prosecuting authorities, courts, juries and governors to discriminate on grounds of race, sex and poverty in the administration of capital punishment. This point was not raised on direct appeal and is therefore procedurally barred. Pruett, supra; King, supra; Evans, supra; Smith, supra; Edwards, supra; Wheat, supra.

III.

Q.
Hill's final assignment of error is that he was denied effective assistance of counsel in violation of the Sixth, Eighth and Fourteenth Amendments. The United States Supreme Court has recently addressed the standard of review to be applied in ineffective assistance of counsel claims. In Strickland v. Washington, ___ U.S. ___, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In that case the United States Supreme Court held that in order to successfully assert an ineffective assistance of counsel claim, the defendant must prove that his counsel's performance was deficient and that that deficient performance prejudiced his defense. In proving prejudice "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Applying that standard we are unable to say that petitioner Hill received ineffective assistance of counsel in his defense.

CONCLUSION
Having addressed the points raised by Hill in his motion for leave to file petition for writ of error coram nobis and finding no merit in any of them, we hereby deny that motion.
MOTION FOR LEAVE TO FILE PETITION FOR WRIT OF ERROR CORAM NOBIS DENIED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, PRATHER and SULLIVAN, JJ., concur.
HAWKINS and ROBERTSON, JJ., dissent.
HAWKINS, Justice, dissenting:
I respectfully dissent.
I would grant the petition.

STATEMENT OF THE CASE
Capital murder was the offense for which petitioner, Alvin Hill, was convicted in the Circuit Court of DeSoto County and death was the sentence imposed on November 21, 1980. This court affirmed the conviction and sentence of death in Hill v. State, 432 So.2d 427 (Miss. 1983). Petition for rehearing was denied by this court on May 25, 1983, and petition for writ of certiorari was denied by the United States Supreme Court on November 7, 1983. Pursuant to Miss. Code Ann. § 99-35-145 (1972) and Rule 38 of the Mississippi Supreme Court Rules, the petitioner files this application for leave to file a petition for writ of error coram nobis in the Circuit Court of DeSoto County.

DISCUSSION OF ISSUES[1]
Current posture of post-conviction relief law in Mississippi is not clearly defined;[2] *802 however, post-conviction relief via writ of error coram nobis may presumably be grounded on claims involving errors of fact unknown to the trial court,[3] newly-discovered evidence of such a nature as to cause a reversal,[4] constitutional infringement,[5] or ineffective assistance of counsel.[6]
Section 2 of Hill's petition for writ of error coram nobis is entitled "Grounds of Constitutional Invalidity of Petitioner's Conviction and Sentence" and sets forth seventeen grounds (A.-Q.) for arguing that a new trial is mandated. Because I write a dissent, I will only discuss the grounds upon which I would grant the petition.

A.
Petitioner's first claim is that "[n]ewly-discovered evidence reveals that the alleged murder weapon, which was placed in evidence and exhibited to the jury was unquestionably obtained as a result of petitioner's suppressed confession." (Petition at 5). He claims that there was no independent source for the discovery of the revolver and that admission of the weapon under such circumstances was a violation of his 4th, 5th, 6th, 8th and 14th Amendment Rights.
Petitioner states that he admitted during intensive interrogation that he committed the robbery and murder in DeSoto County. He claims he further admitted only to Rick Ward, a DeSoto County investigator, and Bobby Gene Biffle, a DeSoto County constable, that he returned the murder weapon to Robert Carter, a resident of Memphis, from whom he had borrowed it.[7] (Petition at 6). The confession was suppressed at trial; however, the gun, which according to ballistics examination and pathology tests was the one used in the shooting of the victim, Robert Lee Watkins, was admitted as evidence.
Petitioner claims that the only source of evidence disclosing the whereabouts of the murder weapon aside from that evidence obtained as a result of a confession, which was adjudged inadmissible, was "Sheriff Monteith's bald assertion that, as a result of interviewing Sammie Hampton, he informed the Memphis Police that the weapon was possessed by Robert Carter."[8] *803 (Petition at 7). On affirmance of Hill's conviction, this court noted Monteith's actual testimony as follows:
When Sheriff Monteith was called as a witness by the state, the record reveals the following testimony relative to the source of his information about the murder weapon:
QUESTION: Sheriff Monteith, in the course of your investigation, did you have occasion to interview Sammy Hampton?
ANSWER: I did.
QUESTION: As a result of those interviews, did you at any time inform officers of the Memphis Police Department where a possible gun could be found?
ANSWER: I did.
Hill v. State, 432 So.2d 427, at 432 (Miss. 1983). Petitioner asserts, contra to the trial judge's decision on the issue, that this is not enough to establish an independent source of evidence for admission of the gun. (See appendix for judge's opinion.) This court further stated on affirmance of the conviction that,
On the testimony which was before the circuit judge and the record as made, no one could ever know which of these two hypotheses is correct. Argument from now on till doom's day could never give the answer; from this record we are damned to an eternal suspense.
Under these circumstances we are not about to fault a beleagured trial judge, nor can we say he abused his discretion in finding that the information about the gun came from an independent source. On the record before him at trial, and in the motion for a new trial, he had a right to believe the testimony of the officers, and we find no reversible error on this record in his having done so.
432 So.2d at 437.
Petitioner Hill now comes before this court claiming that newly-discovered evidence based on statements by Monteith and Hampton ends the "eternal suspense" and "conclusively establishes that the firearm was obtained as a direct result of petitioner's suppressed confession". (Petition at 8). Exhibit # 1 provided by petitioner is Hampton's affidavit which states that Hampton never told Monteith the firearm used in the murder of Robert Lee Watkins could be found in the possession of Robert Carter or be found by contacting Carter, that he had no knowledge at the time of the firearm's whereabouts, that he was never personally acquainted with Robert Carter, and that he never suggested to Monteith that he speak to Carter in regard to the murder and hi-jacking at all.[9] Secondly, petitioner asserts in Paragraph 33 of his petition that "Sheriff Monteith is now willing to testify that he had little or no involvement in the investigation of the DeSoto County hi-jacking because the investigation into the Tunic County hi-jacking was his sole responsibility, he has no recollection of how the murder weapon was found, and in fact, he does not recall whether it was recovered at all". However, there is no attached affidavit supporting this bald assertion.[10]
In this court's opinion affirming Hill's conviction and sentence of death, it was indeed recognized that evidence obtained "as fruit of the poisonous tree" is inadmissible unless knowledge of the evidence was obtained by an independent source. Hill v. State, 432 So.2d 427, 435-36 (Miss. 1983) (citing Silverthorne Lumber Co. v. U.S., *804 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); Nardone v. U.S., 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939); Wong Sun v. U.S., 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). However, relief based on this principle is sought here, after confirmance of conviction, via writ of error coram nobis under a theory of newly-discovered evidence. Petitioner has cited no authority in cases dealing with newly-discovered evidence on petition for writ of error coram nobis. Furthermore, the burden of proof in an application for WECN is on petitioner. Bell v. U.S., 265 F. Supp. 311, aff'd 375 F.2d 763, cert. den., 389 U.S. 881, 88 S.Ct. 121, 19 L.Ed.2d 175 (1967); Scott v. U.S., 434 F.2d 11 (5th Cir.1970); Baker v. State, 358 So.2d 401 (Miss. 1978); Botts v. State, 210 So.2d 777 (Miss. 1968); Sanders v. State, 440 So.2d 278, 288 (Miss. 1983).
Guidelines that have been followed by this court in granting a new trial on newly-discovered evidence were set forth in Lang v. State, supra, as follows:[11]
We entertain and sustain the petition under Chapter 250, Laws of 1952, as being a petition for leave to file in a trial court a motion to vacate the judgment and for a new trial on the ground of newly-discovered evidence, and such leave is hereby granted. We recognize that there must be an end to litigation, and a judgment once solemnly entered must not be lightly opened or vacated, and never except for cogent reasons. Such a petition should be confined to the narrowest limits compatible with justice; it will be sustained only if newly-discovered evidence is of such nature that would be practically conclusive that it would cause a different result; it will not be sustained if the petitioner or his attorney knew of the existence of such evidence at the time of the trial, or could have discovered it by the exercise of due diligence; it will not be sustained if the newly-discovered evidence is merely cumulative, or additional to that adduced at trial; it will not be sustained if newly-discovered evidence merely tends to impeach other testimony offered at the trial; and it must be filed as soon as reasonably practical after the discovery of the new evidence.
92 So.2d at 675-76.
In Carraway v. State, 167 Miss. 390, 148 So. 340 (1933), decided prior to Lang, it was stated that "a party asking for a new trial on the ground of newly-discovered evidence, must satisfy the court that the evidence has come to knowledge since the trial, and that it was not owing to want of diligence that it was not discovered sooner, and that it would probably produce a different result if a new trial be granted." 167 Miss. at 402, 148 So. at 344 (citations omitted). The court went on to say:
It is perfectly evident to any lawyer, that if litigation is to be finished, and ever come to an end, the rules of diligence should be applied to all litigants, and they should be required to present their contentions while the litigation is in progress if the facts are known to them, or could, by reasonable diligence, be known. A party will not be permitted to disturb a judgment when he is guilty of latches or negligence in reference to the matter.
167 Miss. at 402, 148 So. at 344. In regard to evidence presented at trial the court had this to say:
[W]here a matter has been presented by issues during the trial, and the party neglects to present all the evidence at his command, the case cannot be tried on motion for a new trial, or a writ of error coram nobis. The judgment cannot be set aside merely on the ground that certain witnesses did not testify on the trial. The party must be prepared to know the facts when the case is brought for trial, and the fact that he knows, or by reasonable diligence, could have known, must *805 be considered. The mere fact that a witness changes his testimony after the trial is ended is no ground for a new trial.
167 Miss. at 404-05, 148 So. at 345. In Carraway, the defendant knew all the facts that were involved at the time the trial was in progress, therefore, this was not considered newly-discovered evidence.
In Entrekin v. State, 242 Miss. 262, 134 So.2d 926 (1961), an application for leave to present to the trial court a motion for a new trial on the ground of newly-discovered evidence was denied. Affidavits from three people were attached to the application asserting facts involving the conviction. This court stated that with the "exercise of any diligence whatever" the asserted facts would have previously been disclosed. 242 Miss. at 266, 134 So.2d at 927. The court further stated that "This purported new evidence is insufficient. It certainly does not attain such degree of proof to give rise to grave doubts of ... guilt, or to raise a reasonable probability that, if presented in a new trial, it would cause a jury to reach a different verdict." 242 Miss. at 266, 134 So.2d at 927.
Application for leave to file a petition for WECN was also denied in Kennard v. State, 246 Miss. 209, 148 So.2d 660 (1963). In that case the application submitted motions to quash the indictment and venire on the ground of systematic exclusion of Negroes from grand and petit juries. This court held that no such systematic exclusion was shown. Additionally, applicant had moved for a writ of subpoena duces tecum for production of voter registration books but subsequently withdrew that motion. This court further held that the applicant could not complain of the trial court's failure to sustain his motion when he had withdrawn it. Additionally, the court stated:
Considering this application as one supplementary to a petition for writ of coram nobis, it does not fall within the ample due process standards of the Lang cases. The alleged newly-discovered evidence is cumulative and additional to that adduced at the trial on the identical issue of systematic exclusion. It would tend to impeach other testimony offered by Kennard himself at the trial. Application does not show that such evidence could not have been discovered by him, for presentation at the trial, by the exercise of due diligence; and it would certainly not render it practically conclusive or reasonably probable that a different result would follow on a re-hearing of this issue.
246 Miss. at 212-13, 148 So.2d at 662.
In Johnson v. State, 359 So.2d 1371 (Miss. 1978), this court affirmed the lower court's denial of WECN citing Lang. The applicant wished to establish that testimony of Willie James Riley and Raymond Simmons left him at a bus station in Georgia and that he did not return with them to Jackson County, MS. The court stated the following on the matter:
Although appellant argues that testimony of Simmons was newly-discovered evidence which was unknown to him at the time of trial, and could not have been discovered with diligence, and that a different result would have been brought about by such testimony, the conditions of Lang were not met. Appellant knew that Raymond Simmons and Willie Riley went with him to Columbus, GA, knew that they were living in Moss Point and were available at the time of trial. He testified at trial that Lonnie Johnson left him at the bus station and the testimony of Simmons may be said to be cumulative".
359 So.2d at 1375.
On the basis of these authorities, the appellant's allegations do not represent new evidence that could not have been discovered in the exercise of due diligence at or before the time of trial. In regard to conduct of defendant's counsel, this court stated on direct appeal that "With ample time to prepare for the hearing on this motion, they did not subpoena Ward, Sheriff Monteith, or Hampton to testify, and no affidavit of any of these three was supplied the court." 432 So.2d at 437. Additionally, *806 in Footnote # 1 of the opinion in Hill v. State it was noted that Hampton did not testify in the case and that he was not listed as a prospective witness for the state in any pre-trial discovery proceedings. In Paragraph 31 of applicant's petition, it is stated in contradiction to Footnote # 1 of the opinion that "it must be noted that petitioner's trial counsel expected the state to call Sammy Hampton, since he was listed as a state's witness. When the state failed to call Hampton, petitioner trial counsel attempted to do so. Unfortunately, Hampton refused to answer questions posed by petitioner's attorneys and refused to testify at the hearing." (Petition at 8). Nowhere does petitioner mention that he had Hampton subpoenaed. Under the authority cited failure to call a witness or a change in a witness' testimony does not warrant a new trial on the basis of new evidence. In addition to these authorities Rule 38 of the Mississippi Supreme Court Rules provides that "the petition shall state ... sufficient facts to show that there was no want of reasonable diligence on the part of petitioner or his counsel". Therefore, the petition and affidavits presented by petitioner are not sufficient to warrant a hearing for newly-discovered evidence. However, this result does not preclude appellant from arguing ineffective assistance of counsel based on lack of due diligence, as discussed infra.
Petitioner argues, additionally, that apart from the newly-discovered evidence, it was error to resolve the dispute in favor of the state in that the state failed to sustain its burden of proof in establishing an independent source for the weapon. However, sustenance of the state's burden of proof was decided by this court on direct appeal and should not be at this point re-litigated.

B.
Petitioner's next argument is that "newly-discovered evidence reveals that the failure of petitioner's trial counsel to raise an objection to the concededly improper questioning of the co-defendant was definitely not a matter of trial strategy". (Petition at 11). The subject questioning is reported in the decision on direct appeal as follows:
The state called the co-defendant Gregory Tucker as a witness. During questioning of Tucker, the record reveals the following:
Q. What have you been convicted of?
A. Assault and larceny of a person in Tennessee, and manslaughter down here.
Q. Manslaughter down here in connection with what?
A. With this case here.
432 So.2d at 438-39. As petitioner points out, this court on direct appeal held that the manner in which his co-defendant was questioned constituted error, but reversal was not warranted because petitioner's attorneys did not raise an objection:
As to the state's questioning of Tucker about his conviction of manslaughter, this constituted error. See Buckley v. State, 223 So.2d 524 (Miss. 1969). The error was not as egregious as it would have been had Tucker been a witness for the defense, and the state had brought it out on cross-examination. See Warren v. State, 407 So.2d 100 (Miss. 1981); and Henderson v. State, 403 So.2d 139 (Miss. 1981). The state's questioning of Tucker, a state witness, about his conviction of manslaughter was not altogether a one-way street benefitting the state. This information enabled the jury to see that a radically different treatment had been extended by the state to Tucker than that proposed for Hill.
The defense sought mileage out of this concession in cross-examination.
In view of the fact that no objection was made, that Tucker was cross-examined about his plea and conviction, and the defense at least three times in closing argument compared the treatment and punishment of Tucker as opposed to that being sought for Hill. (R. 1075-1076), defense counsel's complaint at this stage appears directed towards a trial strategy in which they were participants. What this amounts to is a trial strategy counsel *807 aided and abetted, and now seek to criticize.
Moreover, counsel did not even see fit to assign this error in their motion for a new trial. If defense counsel did consider that their client was done an injustice in this respect, we cannot understand their failure to mention it in their motion for a new trial.
432 So.2d at 439.
Petitioner argues this procedural bar as improper under the guise of newly-discovered evidence. In addition to the above discussion, Black's defines newly-discovered evidence as follows:
Testimony discovered after trial, not discoverable before trial by exercise of due diligence... . Newly-discovered evidence such as will support motion for new trial or to re-open for amended findings refers to evidence of facts existing at the time of trial of which the aggrieved party was excusably ignorant.
Black's Law Dictionary 940 (5th Ed. 1979) (citations omitted). Petitioner concedes that the attorney's failure to object was "due solely to their ignorance of the applicable law". (Petition at 12). As defined by Lang, newly-discovered evidence is that which could not have been discovered by the exercise of due diligence.
Discovering how or why a trial counsel's mistake was made does not constitute evidence; furthermore, even if this information were considered newly-discovered evidence, an attorney's ignorance of the law or lack of due diligence has not been held adequate grounds for issuance for a WECN. Therefore, this argument is not a proper one for claiming new-discovered evidence in an ECN petition. Once again this should not preclude argument for ineffective assistance of counsel.

C.
Under this next point petitioner makes an argument very similar to that made under Point B. In his closing argument on the trial below, the prosecuting attorney made the following statement:
I know that the attorneys would attempt to place a heavy burden on you. They would have you believe that your voting to kill the defendant and that he's going to be taken outdoors here in ten minutes and hung. That's not so, and they know that's not so, and that's unfair. That's totally unfair. They know your word is not the last word. They know that.

432 So.2d at 439. No objection was made by defense counsel. On direct appeal this passage was assigned as error and was discussed in this court's opinion:
The argument made by the prosecuting attorney to the jury that their verdict was not the "last word" was clearly erroneous and would ordinarily be considered highly prejudicial.
In the usual case the jury merely determines guilt or innocence, and the circuit judge determines the sentence. In a capital murder case the jury also determines the sentence.
Any argument by the state which distorts or minimizes this solemn obligation and responsibility of the jury is serious error. Every attorney knows the jury verdict is indeed the last word on a factual dispute. Neither the circuit judge nor this Court is authorized to set aside a jury verdict on conflicting evidence, or a disputed factual issue. Moreover, in a death penalty case a jury should never be given false comfort that any decision they make will, or can be, corrected. In Howell v. State, 411 So.2d 772 (Miss. 1982), which was not a death penalty case, we condemned a "last word" argument.
A prosecutor making this sort of argument is asking for a mistrial.
In this case, however, there was no objection made to this argument. We have consistently held that contemporaneous objection must be made to improper argument by the state, and unless such objection is made, any claimed error for such improper argument will not be considered on appeal. See Coleman v. State, 378 So.2d 640 (Miss. 1979); Thomas *808 v. State, 358 So.2d 1311 (Miss. 1978); Griffin v. State, 292 So.2d 159 (Miss. 1974); Myers v. State, 268 So.2d 353 (Miss. 1972); Peterson v. State, 242 So.2d 420 (Miss. 1970); Ford v. State, 227 So.2d 454 (Miss. 1969); Showers v. State, 227 So.2d 452 (Miss. 1969); and Coburn v. State, 250 Miss. 684, 168 So.2d 123 (1964). It need also be noted that this holding has applied to death penalty cases, as well as other criminal and civil cases.
There is even further foundation for application of this well settled rule in such a case as this, where, not only was there no objection made at trial, but even in the motion for a new trial counsel still did not consider this argument as error. The motion for a new trial was filed December 12, 1980, over two weeks after the trial was concluded, and a hearing was held on this motion January 6, 1981. The record reveals Hill was represented by alert, avid, and thorough defense counsel. We can only conclude counsel did not consider this argument prejudicial, and Hill is bound thereby.
432 So.2d at 439-40. See: Williams v. State, 445 So.2d 798 (Miss. 1984) for approval.
Petitioner claims that newly-discovered evidence reveals that the court's conclusion that counsel did not consider the prosecutor's argument to be prejudicial is factually incorrect. (Petition at 15). He uses the same argument presented above saying that the trial counsel's failure to object was wholly inadvertent and was a product of both a misunderstanding between counsel and ignorance of constitutional and criminal law.
Discovering a mistake made by counsel is not the same as newly-discovered evidence; furthermore, even if it were considered newly-discovered evidence it may not now be brought up in a petition for WECN where lack of diligence, as suggested by present counsel, was the cause of the error. Furthermore, as pointed out in this court's opinion, any prejudicial affects of the remark were diminished by cross-examination and closing arguments. Therefore, this argument is an improper one for claiming newly-discovered evidence in a petition for WECN and should not serve as grounds to substantiate a hearing thereon. Once again, this should not preclude argument for ineffective assistance of counsel.

D.
Petitioner next argues that the prosecuting attorney engaged in acts of misconduct and a pattern of misbehavior during petitioner's guilt and sentencing trials. (Petition at 22.) First he complains that the prosecutor asked questions of the victim's wife that were highly prejudicial and made for the purpose of eliciting sympathy for the victim's family. The questions pertained to children of the victim and his wife and their ages, whether he had been a good provider and how close the children were to their father. Petitioner concedes that no objection was made. Baker v. State, 327 So.2d 288 (Miss. 1976) held that "an objection to the testimony of a witness, conduct of opposing counsel or a remark of the court should be made contemporaneously with the occurrence or matter complained of so that the court may when possible, correct the error with proper instructions to the jury". Id. at 292-293. This is certainly true where the error is first raised on petition for WECN. Secondly, it is asserted that Hill was questioned by an FBI agent while in the county jail and was led to believe that his co-defendant, Hampton, inculpated him in the DeSoto County crime. Petitioner had responded to the agent, "Sammy will get his", and this statement was brought out at trial. Petitioner now claims that this was prejudicial hearsay, egregious misconduct on the part of the prosecutor in creating a non-existent witness, and improper evidence of another crime. (Petition at 24, 25.) Although counsel at trial did object to this testimony on grounds that the corpus delicti was not yet established but the matter was not raised on direct appeal. Prueitt v. State, 261 So.2d 119 (Miss. 1972), held that the Mississippi Supreme Court Rules give this court the option to raise "plain errors" not assigned *809 but counsel may not argue questions not raised by the assignments of error. Therefore, post-conviction request for relief on a question of this nature certainly comes too late. Furthermore, whether this statement was in fact highly prejudicial appears at best to be questionable.
Petitioner also argues that the prosecutor improperly made himself an unsworn witness and vouched for the state's case, thereby overstepping the boundaries of proper argument to the jury. (At P. 25 and 26 of the Petition several instances complained of in opening and closing statements are listed.) Petitioner further complains that the prosecutor focused on nonstatutory aggravating circumstances in the sentencing phase of the trial. There were no objections made at trial concerning these matters and the issues were not raised on direct appeal. Under Baker and Prueitt cited above, petitioner had effectively waived his right to object to comments by counsel even at the time of direct appeal. Furthermore, the jurors were instructed that what the attorneys said was not to be considered evidence. (Record 1058, 1059) Therefore, this whole assignment should be barred from consideration for failure to act contemporaneously based on these authorities and authorities cited, supra.

E.
Petitioner asserts that the failure of petitioner's attorneys at trial to recognize reversible errors and to make proper objections to them violated his 6th, 8th and 14th amendment rights for effective assistance of counsel. He first denotes ineffectiveness encountered before the trial by his attorney's advice to him to confess his role in the Tunica County robbery. It is too late to raise an issue regarding pre-trial tactics on a petition for writ of error coram nobis, and furthermore, this advice concerned a separate charge and is not the subject of the conviction here.
Next, petitioner enumerates several instances of counsel's actions at trial which he claims ineffective assistance of counsel including: (1) failure to call Hampton, Monteith, or Ward for examination concerning the murder weapon; (2) failure to object to questions involving his co-defendant's conviction; (3) failure to object to the prosecutor's remarks in closing argument; (4) failure to recognize that the search of the pick-up occurred before consent was given; (5) failure to obtain a ruling enforcing discovery Rule 4.06; (6) failure to object to prejudicial testimony elicited from the victim's wife; and (7) failure to request an instruction on diminished mental capacity. Petitioner further notes that both his trial attorneys, Suggs and Anderson, had practiced law for only two years prior to the trial of Hill's capital murder case, while it was only Anderson's second criminal trial and Suggs first criminal defense trial. Neither attorney had any criminal appeal experience or experience with capital cases. Affidavits have been attached to the petition which provide that the attorneys, themselves, admit their inexperience and lack of knowledge regarding the seriousness of questions pertaining to convictions of co-defendants or references made to appeals, and they further admit that their actions were due to ignorance and not trial tactics.
On Hill's direct appeal this Court noted that the record revealed "that Hill was represented by alert, avid and thorough defense counsel." 432 So.2d at 440. There were several instances, however, where action taken by counsel was questioned by this Court. A similar claim was cited on direct appeal in Smith v. State, 434 So.2d 212 (Miss. 1983), but in that case no affidavits were supplied, as here.
In my view, Hill has followed the procedures enumerated in Smith v. State, 419 So.2d 563, 564 (Miss. 1982), based on the two-pronged test set out in Callahan v. State, 426 So.2d 801 (Miss. 1983), this application for leave to file a petition for writ of error coram nobis should be granted to allow an evidentiary hearing to determine whether Hill was denied effective assistance of counsel. Under Callahan consideration should first be made of whether *810 counsel was reasonably likely to render effective assistance. The inexperience of counsel as admitted in affidavits pursuant to Rule 38 of the Supreme Court Rules is sufficient to justify a hearing on this point. Secondly, consideration should be made of whether counsel in fact rendered effective assistance. Based on information supplied in the affidavits indicating that counsel was ignorant of the fact that certain events at trial constituted serious error and that failure to object was not a matter of trial tactic coupled with this Court's questions involving conduct of defense counsel at trial. I am of the opinion that there is sufficient evidence presented on this point to justify a hearing for a factual determination of whether petitioner was denied effective assistance of counsel.

APPENDIX
The circuit judge then made his final ruling as to the admissibility of the murder weapon:
THE COURT: The testimony before the Court from Sheriff Monteith given at approximately 4:00 P.M. on November 18th, this being November 19th, and the Court quotes from its notes made in the testimony of Sheriff Monteith that he informed Officer Priddy of the Memphis P.D. where gun could be found after an interview with a person by the name of Hampton, and that he did not know the results of information passed on to the Memphis police officer. During this motion in Chambers, Defendant Hill was called upon to testify for the limited purposes of rebutting testimony of Sheriff Monteith and other officers who had testified primarily as to the recovery of this weapon from a Robert Carter in Memphis, Tennessee, and to the links in the chain establishing custody and control of the weapon since its recovery. The Court understood, and it is now a matter of record, from Defendant Hill that he gave information to Officer Ward about the whereabouts of this weapon out of the presence of Sheriff Monteith, which makes it apparent to the Court that the information passed on to Officer Priddy by Sheriff Monteith was developed by him from some source other than the Defendant, it being contended by Defendant that this information possibly was derived by the Sheriff from the Defendant after and subsequent to the confession which the Court has heretofore suppressed. The Court, therefore, is compelled to overrule the motion now before it in Chambers to suppress the introduction of this firearm because it was derived by statements of the Defendant subsequent to the suppressed confession. Gentlemen, I think the record is abundantly clear on that point, and I think all of you will have to agree that that's what is in the record.
(R. 933-935).
432 So.2d at 434.
ROBERTSON, Justice, dissenting:
When this case was here on direct appeal, I was of the opinion that there were three "errors" committed at trial which necessitated reversal of Alvin Hill's conviction of capital murder and sentence of death. Hill v. State, 432 So.2d 427, 443-452 (Miss. 1983) (Robertson, J., concurring in part, dissenting in part). The majority over my protest held two of these "errors" to have been precluded from our review on the merits because of the failures of trial counsel to make timely and sufficient objection. The third was rejected on its merits.
In my separate opinion on direct appeal, I tried to explain that application of this type of procedural bar in death penalty cases was, to say the least, ill advised. Nothing has occurred in the interim to cause me to doubt the correctness of those views. I accept, however, that, at least insofar as the Hill case is concerned, the matters have been authoritatively and finally decided adverse to my position (including the issue rejected on its merits).
We are now presented a Petition for a Writ of Error Coram Nobis wherein Hill argues that he was on the receiving end of ineffective assistance of counsel. This is an issue which, when presented on the first *811 application for post-conviction relief, will seldom, if ever, be procedurally barred. Read v. State, 430 So.2d 832, 837-842 (Miss. 1983); King v. Thigpen, 441 So.2d 1365, 1368-1369 (Miss. 1983); Smith v. State, 434 So.2d 212, 218-220 (Miss. 1983); Mason v. State, 429 So.2d 569, 572 (Miss. 1983).
The issue before us today is whether Hill should be granted a hearing on the merits of his claim of ineffective assistance of counsel. Even under the majority view in the original Hill decision formally released back on May 4, 1983, two of the three "errors" I complained of were indeed regarded as normally reversible errors, only procedurally barred. Where two clear cut reversible errors were not available on direct appeal to a condemned defendant solely because his lawyer goofed, that would seem to make a prima facie case for ineffective assistance of counsel. See my separate opinion in Hill v. State, 432 So.2d at 451.
Because the requisite threshhold showing has been made, I would grant Hill's application for an evidentiary hearing on the merits of his claim of ineffective assistance of counsel. King v. Thigpen, 446 So.2d 600 (Miss. 1984). That claim, by its very nature, focuses upon the entire performance of counsel  pre-trial and trial. I would exclude no area of inquiry. The substantive standards under which the claim should be litigated are those of Strickland v. Washington, ___ U.S. ___, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which, as I understand it, have supplanted Callahan v. State, 426 So.2d 801 (Miss. 1983). See Stringer v. State, 454 So.2d 468, 476-478 (Miss. 1984); Thames v. State, 454 So.2d 486, 487-488 (Miss. 1984); Lambert v. State, 462 So.2d 308, 315-317 (Miss. 1984).
The majority opinion merely cites the Strickland test and says
"Applying that standard we are unable to say that petitioner Hill received ineffective assistance of counsel in his defense."
Saying that is so no more makes it so than saying the sun rises in the west would make that so. Such conclusions ought be demonstrated. How that may be done without an evidentiary hearing, I do not understand.
I respectfully dissent.
NOTES
[1] Facts will be discussed under each separate topic as needful.
[2] This appears particularly so in regard to constitutional issues. Evans v. State, 441 So.2d 520 (Miss. 1983) (Robertson, J., dissenting); Pruett v. Thigpen, 444 So.2d 819 (Miss. 1984) (Robertson, J., dissenting).
[3] Petition of Broom, 251 Miss. 25, 32-33, 168 So.2d 44, 48 (1964); Allred v. State, 187 So.2d 28, 30-31 (Miss. 1966); Nelson v. Tullos, 323 So.2d 539, 543 (Miss. 1975). Note that with these claims the matter must not have been brought into issue at trial. Petition of Broom, 251 Miss. 25, 168 So.2d 44 (1964). However, in recent cases involving constitutional claims, the matter must have been brought up at trial or on direct appeal or the result may be procedural default. Wheat v. Thigpen, 431 So.2d 486 (Miss. 1983); Edwards v. Thigpen, 433 So.2d 906 (Miss. 1983); Smith v. State, 434 So.2d 212 (Miss. 1983); Evans v. State, 441 So.2d 520 (Miss. 1983); King v. Thigpen, 441 So.2d 1365 (Miss. 1983); Pruett v. Thigpen, 444 So.2d 819 (Miss. 1984). Moreover, if the issue had been raised and fully litigated on the merits claims are barred still under notions of res judicata and collateral estoppel.
[4] Lang v. State, 230 Miss. 147, 163, 92 So.2d 670 (1957, cert. den. 352 U.S. 936, 77 S.Ct. 236, 1 L.Ed.2d 167); Gordon v. State, 160 So.2d 73 (Miss. 1964); Kennard v. State, 246 Miss. 209, 148 So.2d 660 (1963). For purposes of error coram nobis petitions, cases have distinguished as grounds for the petition matters or errors of fact not appearing in the trial record from matters concerning newly-discovered evidence. The former was the original focus of error coram nobis. Wetzel v. State, 225 Miss. 450, 76 So.2d 194 (1954). Only on extension of the writ's availability was it allowed for newly-discovered evidence and then only if it would "probably produce a different result or induce a different verdict". Lang v. State, 232 Miss. 616, 100 So.2d 138 (1958).
[5] Petition of Broom, 251 Miss. 25, 168 So.2d 44 (1964); Nelson v. Tullos, 323 So.2d 539 (Miss. 1975); King v. Cook, 287 F. Supp. 269, 271-72 (N.D.Miss. 1968).
[6] Read v. State, 430 So.2d 832 (Miss. 1983); King v. Thigpen, 446 So.2d 600 (Miss. 1984); Berry v. State, 345 So.2d 613 (Miss. 1977).
[7] Prior to this admission, petitioner had stated that he discarded the murder weapon in the Coldwater River.
[8] Hill and Sammie Hampton had been arrested for a Tunica County hi-jacking and were held under custody of Sheriff Monteith of Tunica County when questioned about the DeSoto County hi-jacking and murder of Robert Lee Watkins, the subject of this petition.
[9] Paragraph 32 on Page 8 of the Petition misconstrues what the affidavit actually states. Petitioner indicates that Hampton swore he knew nothing of the weapon when actually states he knew nothing of the whereabouts. Petitioner further states that Hampton swore he never heard of Robert Carter while the affidavit actually states that he has never been personally acquainted with Robert Carter. The affidavit was signed by Hampton and dated February 2, 1984.
[10] Moreover, this statement does not appear to have any significant inconsistency in Monteith's prior testimony as designated. Also, changed or recanted testimony is not alone an adequate ground for granting a new trial or writ of error coram nobis. Bradley v. State, 214 So.2d 815 (Miss. 1968); Peeples v. State, 218 So.2d 436 (Miss. 1969); Summerville v. Cook, 311 F. Supp. 931 (N.D.Miss. 1970).
[11] Technically, newly-discovered evidence may not serve as grounds for issuance for a writ of error coram nobis. Such relief should be sought by motion and is treated as being "a remedy supplemental to the writ of error coram nobis". Lang v. State, 230 Miss. 147, 92 So.2d 670, 675 (1957).