[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 821 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 822 
This opinion involves consideration by the Court of a Petition by Marion Albert Pruett for Leave to File a Petition for Writ of Error Coram Nobis in the Circuit Court of Lowndes County, Mississippi.
There is no need to dwell at length on the principles of law necessary to be considered by this Court in determining whether or not Petitioner's application should be sustained or denied. We have clearly announced the principles before us in a number of cases, both recently and in the past. See Smith v. State,434 So.2d 212 (Miss. 1983); Edwards v. Thigpen, 433 So.2d 906
(Miss. 1983); Wheat v. Thigpen, 431 So.2d 486 (Miss. 1983);Callahan v. State, 419 So.2d 165 (Miss. 1982); Holloway v.State, 261 So.2d 799 (Miss. 1972); Botts v. State,210 So.2d 777 (Miss. 1968); and Corry v. Buddendorf, 98 Miss. 98, 54 So. 84 (1911).
In Callahan, supra, we adopted the language in In ReBroome's Petition, 251 Miss. 25, 168 So.2d 44 (1964), by saying the following:
 The general scope of a petition for writ of error coram nobis, or motion in the nature thereof, is to bring before a court a judgment previously rendered by it, for the purpose of review or modification. There must be some error of fact and not of law affecting substantially the validity and regularity of the proceedings, which was not brought into issue at the trial. Such motion or petition is an extraordinary and residual remedy to correct or vacate a judgment on facts or grounds not appearing on the face of the record, not available by appeal or otherwise, and not discovered until after rendition of the judgment, without fault of the party seeking relief. It is an attack on a judgment of conviction, valid on its face, but defective by reason of facts outside the record, which deprived accused without fault on his part of the constitutional right to a fair trial.
In the recent case of Smith v. State, supra, we stated:
 We are compelled to note that in the instant case, as is all too often the case in similar post-conviction relief efforts which come before this Court, the petitioner is in actuality merely seeking to relitigate his case. Such is not the proper function of post-conviction relief proceedings in Mississippi. The fair and *Page 823 
orderly administration of justice dictates that a person accused of a crime be afforded the opportunity to present his claims before a fair and impartial tribunal. It does not require that he be given multiple opportunities to "take a bite at the apple." Likewise, the orderly administration of justice does not require this Court to "lead a defendant by the hand" through the criminal justice system. It is this Court's responsibility to provide a meaningful opportunity for defendant to raise his claims and have them adjudicated.
In Botts v. State, supra, we said:
 The function of a writ of error coram nobis is to bring to the court's attention some matter or fact which does not appear on the face of the record which was unknown to the court or the parties at the time, and which, if known, and properly presented, would have prevented the rendition of the original judgment.
In Holloway v. State, supra, we filed the following:
 Moreover, if there was prejudice resulting from the "show up" or "line up," the facts and circumstances were known to petitioner and petitioner's present objection should have been raised at the trial. No such proposition was advanced or submitted to the trial court, either as a pre-trial matter or in the course of the trial. Nor was it assigned as a ground in petitioner's motion for a new trial. A defendant in a criminal trial may not deliberately hold back matters known to him at the time of his trial until after the affirmance of his conviction and then, for the first time, use them to begin the whole process all over again.
Regarding matters previously litigated, we stated in Edwardsv. State, 433 So.2d 906 (Miss. 1983), the following:
 The present issue is contended to be focusing on the inflammatory and prejudicial remarks of the prosecution. At this point it should be noted that if the issue was raised on appeal then it has been previously litigated and therefore is barred from consideration in the present proceedings. If it were not raised on appeal, then the petitioner has accepted the trial court's determination of the issue. Analysis for the petitioner's ground of relief show that it was not raised on direct appeal. Objection was made at trial to the remarks of the district attorney, but the failure to specifically assign such as error in the direct appeal before this court resulted in petitioner's acceptance of the trial court's determination of this issue; therefore it is now barred.
Petitioner, Marion Albert Pruett, was convicted on April 8, 1982, in the Circuit Court of Lowndes County [after change of venue] of the crime of capital murder and on that day concluding a bifurcated trial, the jury returned a verdict sentencing petitioner to death. The appeal to this Court resulted in the cause being affirmed on February 23, 1983. Pursuant to rules of this Court, petitioner filed his petition for a rehearing and this petition was denied on March 16, 1983. Thereafter petitioner filed a petition for writ of certiorari with the United States Supreme Court. On October 3, 1983, that court denied certiorari.Pruett v. Mississippi, ___ U.S. ___, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983).
Using the standards and principles set up by this and other courts to consider the contentions, constitutional and otherwise, of petitioner, we hereafter consider each separately under the capital letter headings set out in the petition.
 A. LACK OF JURISDICTION AND CONSTITUTIONAL VENUE.
The basic contention of petitioner under this point is that the Mississippi court lacked jurisdiction to prosecute petitioner for the crime of capital murder as it occurred in two different states. The primary answer to this contention is the original opinion by this Court on the appeal here. The question was fully and adequately presented and fully briefed and argued. This Court found no merit to the contention of appellant there and the Court *Page 824 
fully set out the authorities for its conclusion. As stated, petitioner filed a petition for rehearing and in that petition made absolutely no request for the court to change its opinion. Both for this reason and the original opinion of this Court, we hold that the question is res judicata. It has been litigated and the decision on this question is final and further litigation thereon is barred. Callahan v. State, supra; Edwards v.Thigpen, supra; Wheat v. Thigpen, supra; and Smith v. State,
supra.
 B. DENIAL OF FAIR TRIAL DUE TO COMMUNITY PREJUDICE.
Petitioner was indicted for capital murder in the Circuit Court of the First Judicial District of Hinds County, Mississippi. This is the most populous county in the state and includes the state capital of Mississippi. Lowndes County, with the principal city of Columbus, is in the north-east section of the state, far away from Hinds County, and usual Hinds County publicity. On motion of petitioner the lower court granted him change of venue from Hinds County to Lowndes County. Petitioner now attempts to put the trial court in error for not again, on the day of the beginning of the trial, changing the venue into another county. In the first place, there was no request whatever for such a change. No objection was made to trying the case in Lowndes County and on the other hand, the record clearly reveals complete acquiescence by the petitioner. This claim by petitioner was not raised in the trial court and was not raised on appeal to this Court and is barred from consideration now under the petition.
 C. FAILURE TO EXCUSE FOR CAUSE A JUROR PREJUDICED AGAINST PETITIONER.
It is contended that the juror in question should have been excused by the court for cause. This occurred during the voir dire examination. This question of law was not raised on appeal, and cannot now be considered. Petitioner, by his actions, accepted the ruling of the trial court.
 D. THE DEATH QUALIFICATION OF PETITIONER'S JURY.
The record is clear that petitioner accepted the court's ruling on selection of jurors who could be fair and impartial and particularly the juror Ferguson mentioned under this point. Any error thought to be had at that time or any alleged error now was not preserved and not presented on appeal. It is readily seen by the record that whether or not to excuse this juror peremptorily was a judgment call and petitioner did not see fit, either through himself as his attorney, or his attorney advisers, to preserve a claim on this point.
 E. USE OF PETITIONER'S INVOLUNTARY AND UNCONSTITUTIONALLY OBTAINED STATEMENT.
All contentions under this point were assigned on appeal to this Court and fully, fairly and adequately considered by the Court and the decision thereon appears in the Court's opinion with a complete discussion of the issues. There was a full, complete and long hearing on this contention prior to petitioner's trial. The matter was fully litigated both in the lower court and in this court and decided against petitioner. Our decision is res judicata on any request for reconsideration for the same reasons previously given.
 F. UNCONSTITUTIONAL USE OF UNRELATED BAD ACTS.
The record made in the lower court reveals that prior to indictment the trial judge had petitioner brought before him and questioned him extensively about legal representation. [Trial record pp. 4-16]. *Page 825 
Petitioner frequently refers to the trial record, and therefore presumes that we have the privilege of doing the same. The entire record reveals that from the outset, petitioner insisted on being his attorney during all proceedings. The law and all options granted petitioner, constitutionally and otherwise, were fully explained to petitioner. He was also questioned as to his experience in trial advocacy. Petitioner related specific instances of cases in which he had represented himself under criminal charges. He even stated that he was such a successful attorney, that one of his cases tried by him alone, resulted in a mistrial. He stated that he had had access for many years to a federally subsidized law library while serving time in detention centers. He stated he was thoroughly familiar as to the manner in which his defense should be conducted.
Petitioner took the stand and testified on the sentencing phase of the trial and reiterated when he was specifically asked, "You are your own attorney, are you not?" and he answered, "Yes, sir, I am." Further, "You are testifying here in court voluntarily as your own attorney, is that right?" Petitioner answered "Yes, sir, I am." [R. 931]
On final argument, the leading "legal adviser" appointed at the petitioner's request, in discussing petitioner's testimony, stated to the court and jury that "the fact of the matter is that he (petitioner) said many things today without advice from counsel. He acts as his own counsel most of the time in certain areas."
Petitioner therefore is bound by his own actions. The trial court on October 29, 1981, long before the trial on April 1982, at a time when the record clearly shows petitioner to have been without the use of any drugs of any kind and a very intelligent person, fully advised petitioner of his right to have appointed counsel. There are many pages in the record where the trial judge went further then required to insure that petitioner fully understood his rights. With this full understanding, petitioner insisted on representing himself as his own attorney but requested that "legal advisors" be appointed to assist him. Never did petitioner change from this stand. As shown above, he reaffirmed this during his own testimony on the stand and it was reaffirmed by one of his three competent, experienced and completely qualified "legal advisors" during the closing argument. It is evident from the record that petitioner was an intelligent person. He understood everything that was said to him and all proceedings.
Petitioner can not now complain that he, as his own attorney, at his insistence, failed to preserve a possible appeal claim. He did not preserve any claim under this section of his petition. There is no indication of any request by him for advice from his legal advisors. He did not raise any such claim on appeal; and he is both barred and estopped from raising such claims here at this time. [See authorities hereinbefore set out.]
 G. USE OF INFLAMMATORY PHOTOGRAPHS.
Petitioner claims the application for the writ should be granted because of the introduction of certain photographs of the victim's remains. We first note that neither petitioner, as his own attorney, nor any of his three competent legal advisors, raised this question on appeal. We held as a fact in discussing the cause on appeal, that there was no contention or indication that petitioner was mentally incompetent at any time and that petitioner was a very intelligent and crafty individual from a study of the record. Under all authorities, the trial court cannot be put in error regarding any contention under this point.
 H. IMPROPER CLOSING ARGUMENT — GUILT — INNOCENCE.
We adopt the language set out above under contention G. *Page 826 
 I. DENIAL OF A FAIR TRIAL — GUILT — INNOCENCE.
Under this contention we adopt the language hereinbefore set out under claim G.
 J. JUROR'S VIOLATION OF OATH.
The contention under this section was assigned as error on appeal to this Court and was fully discussed in the Court's opinion giving an explanation as to why the contention was not reversible error. We concluded that in addition to being no legal error, that if any person would ever change his mind regarding a prior opinion against the death penalty in any case, this was the case for that change to be made. The claim was fully argued and considered on appeal and the opinion of this Court affirming the cause bars relitigation.
 K. CONSIDERATION OF IMPROPER AGGRAVATING CIRCUMSTANCES.
Petitioner claims error in the admission of a videotaped interview of petitioner while he was incarcerated. This claim was presented on appeal to this Court and fully and finally decided by the Court in its opinion affirming the cause. The claim is res judicata and cannot be reconsidered in the posture claimed.
 L. IMPROPER LIMITATION OF TESTIMONY BY AND CROSS EXAMINATION OF MITIGATING WITNESSES.
Under this point petitioner complains of rulings during the testimony of witness Norma Jean Gammill. Neither petitioner, as his own attorney, nor his three competent advisors, presented any claim on appeal regarding the witness' testimony. A consideration of any errors in that testimony is completely forbidden under our standards hereinbefore set out in considering petitions for writs of error coram nobis.
 M. IMPROPER INSTRUCTIONS AND IMPROPER JURY FINDINGS AT SENTENCING.
As hereinbefore discussed, a consideration of the allegations under this section is not proper under the requirements and standards set up by authorities heretofore cited.
 N. IMPROPER CLOSING ARGUMENT — SENTENCING.
Neither appellant, as his own attorney, nor his legal advisors, preserved any alleged irregularities or errors in closing arguments, and no claim of such has heretofore been made either in the lower court or on appeal to this Court. The allegations of the petitioner under this point prohibit consideration under the authorities hereinbefore cited.
 O. DENIAL OF FUNDAMENTALLY FAIR SENTENCING HEARING.
Here we adopt the finding set out under section L. above.
 P. INADEQUATE SENTENCING REPORT.
In addition to the finding under section L above, the opinion of this Court on initial appeal clearly stated that we had considered all facets of the cause and everything in the entire record as required by statute. Any claim under this point is barred.
 Q. INADEQUATE APPELLATE REVIEW.
Here we adopt the ruling in section P. above. *Page 827 
 R. DISCRIMINATORY APPLICATION OF DEATH PENALTY.
It is first noted that the material attached to the petition and propounded under this point is inapplicable to petitioner's contention here. By its terms, the courts of Mississippi are condemned because of discrimination against blacks in death penalty cases. Statistics reveal that this is not an accurate statement. Petitioner is white; his victim was white. Petitioner's contention under this point is ridiculous. In addition, the entire contention is barred. No such contention whatever was made in the lower court, or preserved on appeal to this Court, or argued or presented to this Court for decision.
 S. INEFFECTIVE ASSISTANCE OF COUNSEL.
Here we adopt what we said in section F. No person, either layman, lawyer or a member of the judiciary, could contend that under the record in this case, petitioner did not have every opportunity to have effective assistance of counsel. He intelligently described to the trial court before indictment about prior cases he had defended alone, some of them successfully, and explained in detail his knowledge of the law and where he received that knowledge. Throughout, as hereinbefore stated, he contended that he was his own attorney. To ignore this now would make a mockery of the judicial system, both state and federal. It would permit "sandbagging" by any defendant charged with any crime.
Furthermore, it is evident after this Court's careful study of the ten volumes of the record, that petitioner's advisory attorneys insured that petitioner received every benefit legally possible. Under the statutory mandates, this Court is required to review all death penalty cases to the fullest extent, regardless of written assigned errors. We found as a fact as shown by the opinion that petitioner's advisory attorneys were highly competent, having a good reputation as trial attorneys in criminal cases, and that the securing of more competent and experienced attorneys would have been hard to do.
The contentions under this section of the petition do not make any allegations that petitioner, as his own attorney, requested advice from his experienced trial advisors.
Petitioner now attempts to secure relief from the written opinion of an alleged expert psychologist whose opinion admittedly was based on letters from petitioner's present attorneys. There was no contention made throughout the trial of the appeal in any manner that petitioner, was is or ever had been mentally incompetent. He cannot now so contend.
We carefully have studied each contention of petitioner alleging that his "attorneys" were ineffective in a number of principal contentions under the application for writ of error coram nobis. Petitioner, as his own attorney, made no contention on appeal to this court originally regarding any incompetence of his three court-appointed legal assistants. He cannot do so now.
We are constrained to observe that those who are now propounding 123 invalid contentions before this Court to allow petitioner to play games with the Court system would have better served petitioner to have appeared at the outset and placed themselves in the trenches at the lower court and appellate court level. We further observe that even though these "Johnny-come-lately" attorneys attempted to secure relief from the United States Supreme Court by way of certiorari, they were not successful in doing any more before that Court than petitioner had done prior to his conviction being affirmed.
It is obvious that these "Johnny-Come-Latelies" who, in the opinion of this writer, end up causing their client more grief than relief. As stated by United States Supreme Court Chief Justice Burger in Sullivan v. Wainwright, ___ U.S. ___, 104 S.Ct. 290, 78 L.Ed.2d 248: *Page 828 
 The arguments so often advanced by the dissenters that capital punishment is cruel and unusual is dwarfed by the cruelty of ten years on death row inflicted upon this guilty defendant by lawyers seeking to turn the administration of justice into the sporting contest that Roscoe Pound denounced three-quarters of a century ago.
The sporting contest referred to by Chief Justice Burger has now begun in the case involving petitioner, which resulted from one of the most heinous and brutal murders that has ever been presented to a jury in any state. We cannot be accused of judging his actions, as he voluntarily, as his own attorney, got on the stand under oath and described every gruesome detail of his murderous acts. Complete guilt was admitted.
 T. RELIEF REQUESTED.
As hereinbefore discussed, we find that none of the claims of petitioner under his application for Writ of Error Coram Nobis are legally allowable claims under the guidelines set out in the authorities hereinbefore discussed and the requirements of those authorities. We, therefore, deny the Application for Leave to File a Petition for Writ of Error Coram Nobis.
APPLICATION FOR LEAVE TO FILE PETITION FOR WRIT OF ERROR CORAM NOBIS, DENIED.
Execution of Petitioner, Marion Albert Pruett, in the manner prescribed by law, shall be hereby reset for Wednesday, February 1, 1984.
WALKER and BROOM, P.JJ., and ROY NOBLE LEE and HAWKINS, JJ., concur.
PATTERSON, C.J., concurs with result reached by both BOWLING and ROBERTSON, JJ.
ROBERTSON, J., PATTERSON, C.J., and DAN M. LEE and PRATHER, JJ., specially concur.