LEE, C.J.,
for the Court:
¶ 1. Mark Alan Larson and Diana Lynn Carter Larson were married in February 1992. They separated in September 2008, and were granted a divorce in January 2011. Mark was granted a divorce on the ground of adultery. The chancellor awarded Mark custody of the couple’s minor son, Alan. Diana was awarded lump-sum alimony and an interest in certain marital property.
¶ 2. Diana appeals, asserting the following issues: (1) the chancellor erred in granting Mark a divorce on the ground of adultery; (2) the chancellor erred in classifying and dividing the marital estate; (3) the chancellor erred in not awarding permanent or rehabilitative alimony; and (4) the chancellor erred in not awarding her attorneys’ fees. Pertinent facts will be discussed as they relate to each issue.
STANDARD OF REVIEW
¶ 3. We afford chancellors much discretion in our review of domestic-relations cases. Steiner v. Steiner, 788 So.2d 771, 777 (¶ 18) (Miss.2001). This Court will not disturb a chancellor’s findings unless they are manifestly wrong or clearly erroneous, or the chancellor applied an erroneous legal standard. Mizell v. Mizell, 708 So.2d 55, 59 (¶ 13) (Miss.1998).
DISCUSSION
I. ADULTERY
¶ 4. In her first issue on appeal, Diana argues the chancellor erred in granting Mark a divorce on the ground of adultery. To prove adultery, the plaintiff “must show by clear and convincing evidence both an adulterous inclination and a reasonable opportunity to satisfy that inclination.” Atkinson v. Atkinson, 11 So.3d 172, 177 (¶ 20) (Miss.Ct.App.2009) (citation omitted). Adultery may be proven by either direct evidence or, because of the inherently secretive nature of the conduct, circumstantial evidence. Dillon v. Dillon, 498 So.2d 328, 330 (Miss.1986). Establishing an “adulterous inclination” requires proof of either the defendant’s infatuation with a particular person or general adulterous propensity. Lister v. Lister, 981 So.2d 340, 344 (¶23) (Miss.Ct.App.2008). The chancellor must set forth specific findings of fact and conclusions of law with regard to an allegation of adultery. Reynolds v. Reynolds, 755 So.2d 467, 469 (¶ 7) (Miss.Ct.App.1999).
¶ 5. The chancellor made specific findings regarding Diana’s adultery. Diana admitted under oath during a temporary hearing on September 26, 2008, that she engaged in sexual intercourse with Matt Lyle. Diana claims that this admission was actually a typographical error in the transcript, but the chancellor found this claim to be not credible. There was testimony that the security password to Diana’s cellular phone was Lyle’s birthday. There was further testimony regarding a trip to Chicago without Mark’s knowledge, and there were photographs of Diana and Lyle at dinner. Mark and Diana’s housekeeper, Ethel Clark, testified that she overheard a phone conversation between Diana and Lyle’s wife where Lyle’s wife asked Diana to cease contacting Lyle. Although not stated by the chancellor, there was also evidence of Diana’s relationships with other men besides Lyle. Clark testified Diana spoke to her of sexual acts she performed numerous times upon another man named Shot Bright. Diana admitted to having a relationship with another man but stated *1216 she was not having “physical sex” with him.
¶ 6. The chancellor found that Diana evidenced an adulterous inclination and had reasonable opportunities to satisfy her inclination. The record supports the chancellor’s findings. This issue is without merit.
II. CLASSIFICATION AND DIVISION OF MARITAL ESTATE
¶ 7. In her second issue on appeal, Diana contends the chancellor erred in classifying Mark’s grocery stores as his separate property and, thus, non-marital property. In 1989, Mark’s father gifted him one-half ownership in a grocery store in Water Valley, Mississippi, and one-third ownership in a grocery store in Oxford, Mississippi, with no consideration paid by Mark. The transfer of ownership was through a bill of sale dated March 5, 1989, three years before Mark and Diana were married. These grocery stores had been owned by Mark’s family for several decades.
¶ 8. The first step in property distribution as a result of divorce is to classify the property as either marital property or non-marital property based on Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994), in which the Mississippi Supreme Court defined marital property for divorce proceedings as “any and all property acquired or accumulated during the marriage.” Hemsley excludes from this definition assets “attributable to one of the parties’ separate estates prior to the marriage or outside the marriage.” Id. at 914. This includes property obtained by a spouse through gift or inheritance. Johnson v. Johnson, 650 So.2d 1281, 1286 n. 2 (Miss.1994). However, separate property that has been “commingled with the joint marital estate” also becomes marital property subject to equitable distribution. Id. at 1286.
¶ 9. Furthermore, if any income or appreciation resulted from either spouse’s active efforts, then that income or appreciation becomes part of the marital estate. See Craft v. Craft, 825 So.2d 605, 609 (¶ 14) (Miss.2002). Appreciation that is merely passive and not a result of either spouse’s active efforts remains separate property. See Craft, 825 So.2d at 609 (¶ 14). We must also presume that spousal efforts “whether economic, domestic or otherwise are of equal value.” Hemsley, 639 So.2d at 915.
¶ 10. The chancellor determined that any contribution to these two grocery stores by Diana was minimal at best, and there was no increase in value during the marriage that was attributable to Diana. There was testimony that Diana worked occasionally at one of the family grocery stores in the floral department. However, this particular store had been acquired separately by Mark and closed in 2002. There was also testimony Diana refused to sign a personal guaranty required of all family members to do business with a grocery wholesaler. The chancellor found the interest in the two grocery stores to be Mark’s separate property and not subject to equitable distribution. We agree with the chancellor’s determination. Despite her assertions to the contrary, Diana did not actively participate in the business, did not participate in business decisions, and did not invest or contribute money to its ongoing operations.
¶ 11. After determining that the interest in the two grocery stores was non-marital property, the chancellor then proceeded with the equitable division of the property using the factors set forth in Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994). These factors are:
*1217 1. Substantial contribution to the accumulation of the property. Factors to be considered to determine contribution are as follows:
a. Direct or indirect economic contribution to the acquisition of property;
b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
' c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets;
2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise;
3. The market value and the emotional value of the assets subject to distribution;
4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and
8.Any other factor which in equity should be considered.
Id. The chancellor analyzed each factor in determining how to divide the marital estate. The chancellor determined that Mark made the substantial contribution to the accumulation of the property and managed the household. In 2006, Mark paid for Diana to live in West Palm Beach, Florida, for several years under the guise of working in real estate. Diana lived an elaborate lifestyle while there but only earned $500 during the duration of her stay. There was testimony that Diana was, as the chancellor phrased it, “a continuous drain on marital assets” due to her extravagant lifestyle and sizeable gambling debts. There was also testimony that Diana prevented their condominium in Des-tín, Florida, from being rented, which was the reason the condominium was purchased in 2002.
¶ 12. The chancellor awarded Mark the following: the marital home, valued at $285,000 with a mortgage balance of $106, 500 and a second mortgage of $150,000; one-half the value of a Quiznos in Oxford, Mississippi, which was valued at $57,440.62; and two cars in his possession as well as debts associated them. Mark was further ordered to be responsible for the mortgages on the marital home as well as various other substantial debts. Diana was awarded $80,000 as her equity in the marital home; her IRA account; $25,000 for her one-half interest in the Quiznos; the car in her possession; her furs and jewelry; an annuity; and the condominium in Destín. The condominium had a mortgage balance of approximately $574,000. Based on her knowledge of the Florida real estate market, Diana testified the condominium was valued at $1,000,000. The chancellor stated that he awarded the condominium to Diana under the sixth Ferguson factor: “The extent to which property division may, with equity to both parties, *1218 be utilized to eliminate periodic payments and other potential sources of future friction between the parties.” The chancellor did order Diana to refinance the condominium in her name or sell it within six months, or it would become Mark’s property. Diana was ordered to be responsible for the mortgage and homeowner’s fees on the condominium as well as various other substantial debts.
¶ 13.' The chancellor considered all the applicable Ferguson factors in assessing and dividing the marital property. Although the chancellor discussed his reasons for dividing the majority of the marital state, we are unclear as to his decision to award Diana $80,000 in equity on the marital home when the two mortgages on the home added up to $256,500 and the marital home was valued at $285,000. Since we are reversing and remanding for the chancellor to make an on-the-record analysis regarding alimony as discussed below, the chancellor should also set forth his reasons for awarding that much equity in the house to Diana when the record does not support it. If necessary, the chancellor may need to make adjustments to his equitable-distribution award.
III. ALIMONY
¶ 14. In her third issue on appeal, Diana argues the chancellor erred in not awarding her permanent or rehabilitative alimony. Specifically, Diana contends the chancellor failed to make an on-the-record analysis of the factors enumerated in Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). In the judgment of divorce, the chancellor simply says: “In regard to alimony, the Court finds that under the factors set out in Armstrong v. Armstrong, ... no periodic monthly alimony or rehabilitative alimony shall be paid to ... Diana.” The chancellor did award Diana $36,000 in lump-sum alimony. In the opinion attached to the judgment, the chancellor states: “With regard to alimony, this Court looks to the Armstrong factors. With due regard to the factors and the fact that this Court believes Diana is employable and has in fact been employed in the past, this Court [awards Diana] lump[-]sum alimony in the sum of $36,000....”
¶ 15. Diana is correct that our case law requires a chancellor to conduct an on-the-record analysis of the Armstrong factors to support an alimony award. Lowrey v. Lowrey, 25 So.3d 274, 280 (¶ 7) (Miss.2009) (“Failure to make an on-the-record Ami-strong analysis is manifest error.”). In Chmelicek v. Chmelicek, 51 So.3d 1000, 1008 (¶ 27) (Miss.Ct.App.2010), this Court reversed and remanded for the chancellor to make an on-the-record analysis of the Armstrong factors. The chancellor in the present case provided less of an explanation for his decision, as quoted above, than the chancellor in the Chmelicek case. It is unclear from the record why the chancellor considered $36,000 in lump-sum alimony to be equitable. The parties did have sizeable debts and a high standard of living. Diana did admit to committing adultery, but also had health problems. We need an explanation from the chancellor in order to determine whether there was error. This issue is remanded for an on-the-record determination of the Armstrong factors.
IV. ATTORNEYS’FEES
¶ 16. In her last issue on appeal, Diana contends she should have been awarded attorneys’ fees. The chancellor declined to award either party attorneys’ fees. We have held that “unless the chancellor is manifestly wrong, his decision regarding attorney[s’] fees will not be disturbed on appeal.” Dunn v. Dunn, 609 So.2d 1277, 1287 (Miss.1992) (citation omit *1219 ted). In this case there was no itemized account of the attorneys’ fees or any testimony regarding the customary charge in the community, rendering the chancellor unable to make a determination under the McKee factors. See McKee v. McKee, 418 So.2d 764, 767 (Miss.1982). This issue is without merit.
CONCLUSION
¶ 17. We affirm in part and reverse and remand in part for the chancellor to conduct an on-the-record analysis of the Armstrong factors. In addition, the chancellor should discuss his reasoning in awarding Diana equity in the marital home and, if necessary, make any adjustments to the distribution of marital property.
¶ 18. THE JUDGMENT OF THE PA-NOLA COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT AND ONE-HALF TO THE AP-PELLEE.
IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL AND FAIR, JJ., CONCUR. CARLTON, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. JAMES, J., NOT PARTICIPATING.