# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00598-COA

**DIANA LYNN CARTER LARSON**                                                  APPELLANT

**v.**

**MARK ALAN LARSON**                                                               APPELLEE

DATE OF JUDGMENT:                01/20/2014
TRIAL JUDGE:                           HON. MITCHELL M. LUNDY JR.
COURT FROM WHICH APPEALED:   PANOLA COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:      JAMES ROGER FRANKS JR.
                                           WILLIAM RUFUS WHEELER JR.
ATTORNEY FOR APPELLEE:         THOMAS ALAN WOMBLE
NATURE OF THE CASE:             CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:        DENIED APPELLANT REHABILITATIVE
                                           AND PERMANENT ALIMONY AND
                                           REDUCED APPELLANT'S EQUITY IN
                                           THE MARITAL HOME
DISPOSITION:                       AFFIRMED – 05/31/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., CARLTON AND JAMES, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.    Diana Lynn Carter Larson appeals the Chancery Court of Panola County's division of property and alimony in her divorce action. Diana raises two issues: (1) the chancellor erred in determining the equity in the marital home; and (2) the chancellor erred in not awarding her permanent or rehabilitative alimony.

¶2.    Finding no error, we affirm.

## FACTS

¶3.    Mark Alan Larson and Diana married on February 14, 1992. Mark filed for divorce

on September 8, 2008, on the ground of irreconcilable differences. On September 11, 2008, Mark amended his complaint to include the grounds of adultery, habitual cruel and inhuman treatment, abandonment, and, in the alternative, irreconcilable differences. On December 17, 2010, the chancellor issued a ruling granting Mark a divorce on the ground of adultery. The chancellor distributed the couple's assets and assessed the amount of alimony payable to Diana. She was awarded $80,000 worth of equity in the marital home and lump-sum alimony of $36,000, in addition to other property.[1] Diana, aggrieved by the allocation of the marital assets and the alimony award, filed a request for reconsideration, which was denied. On January 7, 2011, the chancery court issued a judgment of divorce. On February 2, 2011, Diana appealed the court's decision.

¶4.　　On March 3, 2013, this Court affirmed in part and reversed and remanded in part the chancellor's judgment. *Larson v. Larson*, 122 So. 3d 1213, 1219 (¶18) (Miss. Ct. App. 2013). This Court's instructions on remand were for the chancellor to conduct an on-the-record analysis of the *Armstrong*[2] factors, which are factors considered when making an alimony determination, and to state the chancellor's reasoning in awarding Diana her portion of equity in the marital home. *Id.* at (¶17). On remand, the chancellor awarded Diana

---

[1] The equity in the marital home and alimony are the only items disputed in this appeal, but the chancellor also awarded Diana: (1) her IRA account; (2) $25,000 for her one-half interest in a Quiznos restaurant; (3) a vehicle; (4) furs and jewelry; (5) an annuity; and (6) a condominium in Destin, Florida, valued at $1,000,000 with a $574,000 outstanding mortgage.

[2] *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993).

$80,000 in equity, but the record supported a finding that there was in fact only $28,500 worth of equity in the home. On December 2, 2013, the chancery court heard oral arguments. On December 17, 2013, the chancery court entered its judgment denying Diana's request for periodic and rehabilitative alimony. In addition, the judgment provided a detailed analysis of the *Armstrong* factors, awarding Diana $28,500 of the equity in the marital home and $87,500 in lump-sum alimony. Diana now appeals the chancellor's judgment following remand from this Court.

## DISCUSSION

¶5. "The overall standard for reviewing the findings of a chancellor is a familiar one and [an appellate] [c]ourt will not disturb those findings unless manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Hill v. Se. Flooring Co.*, 596 So. 2d 874, 877 (Miss. 1992).

### I.      *Allocation of Equity in the Marital Home*

¶6.      Diana argues that the chancellor erred in determining the equity distribution in the marital home. She alleges the valuation of the marital home only accounted for the value of the home and did not account for the personal content and furnishing within the home. Diana valued the items at an additional $474,080, which had not been distributed between the parties. She also argues the second mortgage on the marital home should not have been allowed to affect the valuation on remand, because the chancellor had excluded the second mortgage during the prior trial-court proceeding. She states that the original valuation for

3

the marital home was $285,000, but there was also a $106,500 mortgage on the property. This left $178,500 of equity to split between the parties. On remand, the chancellor allowed the $150,000 mortgage to affect the valuation, which reduced the amount of equity in the home to $28,500, of which Diana received the entire amount. Diana argues she is entitled to a valuation and distribution of the furnishings in the home and a revaluation of the property without the second mortgage as a factor.

¶7.     In response, Mark argues that Diana's assertion that the chancellor improperly valued the marital home is barred. He states the remanded portion of this Court's decision was limited to the on-the-record analysis of the *Armstrong* factors and clarification of Diana's equity award in the marital home. Mark alleges the other arguments raised by Diana have already been rejected and should be barred by caselaw and res judicata. He further alleges that Diana has previously argued that the marital home was insured for $632,100 and the value of the property inside the home had a value of $474,080. This argument has been heard and rejected by the chancery court as well as this Court. *Larson*, 122 So. 3d at 1218-19 (¶¶12-13). Mark argues this argument should be barred since it has already been factored into previous decisions. He also argues that this Court limited the scope of the remand to address the allocation of the $80,000 worth of equity and the analysis of the alimony award. In addition, he contends this Court gave no indication that there was a need to adjust the award on the basis of the valuation of the furnishings within the home or the amount of insurance on the home. He further contends this Court contemplated Diana's argument in

4

the prior appeal and rejected her argument that the award needed to be changed based on those grounds.

¶8.     If an "issue was raised on appeal then it has been previously litigated and therefore is barred from consideration in the present proceedings." *Pruett v. Thigpen*, 444 So. 2d 819, 823 (Miss. 1984). This Court finds that Diana's arguments regarding the valuation of the marital home are barred, as they have been previously contemplated[3] by this Court in deciding *Larson*, 122 So. 3d 1213 (¶¶12-13). Mark is correct in his assertion that the law of the case governs, and it is well established that "[it is] the practice of courts generally to refuse to reopen what has previously been decided." *Cossitt v. Alfa Ins.*, 726 So. 2d 132, 141 (¶47) (Miss. 1998). Diana has failed to present an argument that reflects the limited scope of this Court's instructions to the chancellor on remand.

¶9.     Nevertheless, the chancellor did not abuse his discretion in making his award to Diana. This Court's instructions to the chancery court on remand, with respect to the equity in the marital home, were for the chancellor to state his reasoning for awarding Diana her portion of equity in the marital home. It appears the chancellor originally based his calculations of the positive equity in the marital home on the assumption that only one mortgage existed on the property. Mark brought the second mortgage of $150,000 to the court's attention during the trial. However, the chancellor excluded the second mortgage on

---

[3] Although not directly addressed by this Court in its previous opinion, the arguments presented, with respect to this issue, were contemplated in the trial court's opinion and in this Court's denial of Diana's motion for rehearing in cause number 2011-CA-0305-COA.

the property, because it had not been included in the parties' Rule 8.05[4] financial statements. According to the record, there is no dispute that a second mortgage existed during the time of these proceedings. On remand, the chancellor accepted this error as evidenced by his statement in his opinion that "it appears the equity of the marital residence is disturbing to the Court [of Appeals] and frankly it is to this chancellor." The chancellor corrected this error by properly adjusting the amount of equity distributed to Diana. It is clear from the chancellor's opinion that he weighed all factors in his decision and found the award in line with *Ferguson v. Ferguson*, 639 So. 2d 921, 929 (Miss. 1994),[5] as evidenced by his statements that "[t]his [c]hancellor attempted to make an equitable division and be fair to both sides," and that "the $80,000 appeared to be equitable and sufficient for Diana's needs." In addition, the chancellor's original order valued the "home and furnishings" with respect to the marital home at $285,000. Although Diana argues the furnishings within the home were worth significantly more, she provides no evidence to support her contention. In the absence of that information, this argument is without merit.

## II.     *Permanent and Rehabilitative Alimony*

---

[4] UCCR 8.05.

[5] "All property division, lump sum or periodic alimony payment, and mutual obligations for child support should be considered together. Alimony and equitable distribution are distinct concepts, but together they command the entire field of financial settlement of divorce. Therefore, where one expands, the other must recede. Thus, the chancellor may divide marital assets, real and personal, as well as award periodic and/or lump sum alimony, as equity demands." *Ferguson*, 639 So. 2d at 929 (internal citations and quotations omitted).

¶10.  Diana argues the chancellor erred in not awarding her permanent or rehabilitative alimony. She asserts that the chancellor's award was grossly inadequate in light of the parties' respective financial situations. She argues that Mark receives approximately $6,500 per month in income compared to the $230 disability payment she receives each month as well as a $10,000 annuity payment every five years. She contends that "[a]limony, if allowed, should be reasonable in amount, commensurate with the wife's accustomed standard of living, minus her own resources, and considering the ability of the husband to pay." *Gray v. Gray*, 562 So. 2d 79, 83 (¶4) (Miss. 1990). She also contends that the distribution made by the chancellor falls below her accustomed standard of living, and therefore should be adjusted.

¶11.  In response, Mark argues that the chancellor did not abuse his discretion by not awarding Diana alimony. "[T]his court will not disturb a chancellor's findings regarding the award or amount of alimony unless there is manifest error." *Rodriguez v. Rodriguez*, 2 So. 3d 720, 730 (¶26) (Miss. Ct. App. 2009) (citing *Armstrong*, 618 So. 2d at 1280). According to Mark the chancellor conducted an analysis of the *Armstrong* factors as ordered, and his findings support the fact that Diana was not entitled to rehabilitative or permanent alimony. Mark argues that the chancellor carefully weighed the factors and found that ten of the twelve factors weighed in favor of Mark, the other two favored neither party, and therefore "not one single factor weighed in favor of granting . . . [Diana] alimony."

¶12.  This Court is of the opinion that the chancellor satisfied his obligation on remand.

7

The on-the-record analysis of the facts of the case gave context as to how he arrived at his decisions. The chancellor did not abuse his discretion. The chancellor was instructed to address the distribution of equity in the marital home and analyze the *Armstrong* factors with respect to the alimony. The following factors are to be considered by the chancellor in arriving at findings and entering a judgment for alimony:

> (1) [t]he income and expenses of the parties; (2) [t]he health and earning capacities of the parties; (3) [t]he needs of each party; (4) [t]he obligations and assets of each party; (5) [t]he length of the marriage; (6) [t]he presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care; (7) [t]he age of the parties; (8) [t]he standard of living of the parties, both during the marriage and at the time of the support determination; (9) [t]he tax consequences of the spousal support order; (10) [f]ault or misconduct; (11) [w]asteful dissipation of assets by either party; or (12) [a]ny other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.

*Armstrong*, 618 So. 2d at 1280. As evidenced from the court's judgment, the chancellor went step by step through each factor explaining his analysis. The court's judgment stated:

> (1) The parties['] income and expenses. Mark['s] . . . income is, without a doubt, greater than Diana's. However, out of that income comes great expenses[.] (i.e.[,] the house mortgages as well as living expenses and educational expenses of the parties['] minor child, Alan, without the benefit of financial help from Diana). Diana left the marital residence to move to Florida to become knowledgeable in the real estate market in that area and according to testimony, she had numerous contacts in that arena. Her expenses further were not that great and [she] was not "saddled" with expenses of the minor child, Alan. (2) The parties['] health and earning capacities. At the time of the divorce both parties' health was good and even though Mark's earning capacity was greater, Diana was capable of making a living in the real estate market in Florida. (3) Each party's needs. The division of the marital assets as well as $36,000.00 [in] lump-sum alimony . . . and the $80,000.00 appeared to be equitable and sufficient for Diana's needs. (4) Each party's obligations and assets. Diana's obligations were not that great[,] especially in

8

view of the fact that she had no financial obligations to support the minor child and his educational or medical needs. Her equitable division of assets appeared substantial in view of her estimate of the value of the condominium and the equity thereon, which was given to her. (5) The length of marriage. Although the marriage was some sixteen years, they lived apart and separate for some years with Diana choosing to reside in [F]lorida and learn the Florida real estate business. (6) The presence or absence of the minor children in the home, which may require that one or both of the parties either pay, or personally provide[,] child care. Diana does not have the responsibility financially with regard to the health, education[,] and support of their minor child, Alan. This is huge and "insulates" Diana from the financial pitfalls of raising a child to majority (and then some). (7) The parties' age. This Court doesn't consider this to be a factor. (8) The parties' standard of living, both during the marriage and at the time of the support determination. This factor concerned the Court as both parties lived above their respective means. (9) The parties['] tax consequences of any spousal support order. The Court did take this into consideration[,] hopefully not burdening Diana with tax consequences of a support order. (10) Fault or misconduct. The Court did take this, somewhat, into consideration in its ruling. Diana's marital infidelity and deciding to remove herself from the marital home and from the trials and tribulations of the marriage and raising an adolescent son definitely was an important consideration. (11) Wasteful dissipation of assets by either party. As noted before, Diana's lavish lifestyle was a continuous drain and wasteful dissipation of assets. Living outside the marriage in West Palm Beach and excessive gambling was not helpful to the marriage, nor the accumulation of assets. (12) Any other factor deemed by the Court to be "just and equitable" in connection with the setting of spousal support. A huge factor in not awarding any alimony, rehabilitative or period[ic][,] was [the] "just and equitable" factor . . . . [T]his Court placed the entire financial obligation of raising the parties' child . . . on Mark. This Court also felt that the lump-sum alimony in the amount of $36,000 was another equitable factor that negated periodic or rehabilitative alimony being awarded.

¶13. The chancellor demonstrated his analysis of the *Armstrong* factors. On remand, this Court gave the chancellor the instruction to, "[i]f necessary, . . . make adjustments to his equitable-distribution award." Accordingly, the chancellor's award to Diana of $28,500 of equity in the marital home and the award of $51,500 of additional alimony were not manifest

9

error, and this Court does not find that the chancellor abused his discretion.

¶14.    Accordingly, we affirm.

¶15.    **THE JUDGMENT OF THE CHANCERY COURT OF PANOLA COUNTY IS AFFIRMED.    ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, FAIR AND WILSON, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.  GREENLEE, J., NOT PARTICIPATING.**